UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

GREGORY HOLLOWAY            )
CI RIVERS                   )
CORRECTIONAL INSTITUTION    )
145 PARKER`S FISHERY ROAD   )
WINTON, NC 27986            )
DCDC 229-450                )
                            )
and                         )
                            )
KARMESE WASHINGTON          )
CENTRAL TREATMENT FACILITY)
1901 E STREET, SE, WASHINGTON, DC 20003)
DCDC 287-973                )
                            )
and                         )
                            )
RICKY ROBERTSON             )
917 VARNEY STREET, SE       )
WASHINGTON, DC 20032        )
                            )
On behalf of all others     )
similarly situated,         )
                            )
        Plaintiffs          )
                            )
        v.                  )
                            )
GOVERNMENT OF THE           )
THE DISTRICT OF COLUMBIA,   )
                            )
SERVE:  Mayor ANTHONY WILLIAMS)
Or his designee             )
Office of the Secretary     )

Formatted: Indent: Left:  0"

1

Gladys Herring                          )
John Wilson Building                     )
1350 Pennsylvania Avenue, N.W.           )
Washington, D.C.  20004                  )
                                         )
                            Defendant    )
_____

## CLASS ACTION

### FIRST AMENDED COMPLAINT FOR MONEY DAMAGES AND INJUNCTIVE RELIEF AND JURY DEMAND

#### Introduction

1.      This is an action brought by Gregory Holloway, and Karmese Washington

on their own behalf and on behalf of the Overdetention Class (defined below)

injured by the Government of the District of Columbia's (the "District's") pattern

and practice of allowing its Department of Corrections to hold inmates in the DC

Jail or the Central Treatment Facility ("CTF") after a judge or judicial officer

(hereinafter the term "judge" includes the term "judicial officer") has ordered their

placement in a halfway house (sometimes referred to as overdetentions).

2.      This is also an action brought by Gregory Holloway on his own behalf and

on behalf of the Male Equal Protection Class (defined below) injured by the

Government of the District of Columbia's (the "District's") pattern and practice of

allowing its Department of Corrections to hold male inmates in the DC Jail or the

Central Treatment Facility ("CTF") after a judge or judicial officer (hereinafter the

2

term "judge" includes the term "judicial officer") has ordered their placement in a halfway house, and women are generally placed in a halfway house in accordance with their commitment orders.

3.      Mr. Holloway and <u>Mr. Robertson and</u> Ms. Washington bring this action on behalf of male and female inmates (Overdetention Class) against the Government of the District of Columbia under Section 1983 of the Civil Rights Act of 1871, 42 U.S.C. § 1983, to enforce the Fourth, Fifth and Eighth Amendments.

4.      Mr. <u>Holloway and Mr. Robertson</u> also bring an equal protection claim on behalf of male inmates only (Male Equal Protection Class) against the Government of the District of Columbia under Section 1983 of the Civil Rights Act of 1871, 42 U.S.C. § 1983, to enforce their equal protection rights under the Fifth Amendment because virtually all the persons the District holds in the DC Jail or the CTF after a judge orders their placement in a halfway house are men, and women are generally placed in a halfway house in accordance with their commitment orders.

| **Deleted:** Holloway |
| **Deleted:** s |

5.      Mr. Holloway and <u>Mr. Robertson and</u> Ms. Washington ask the Court to declare two separate classes, the Overdetention Class and the Male Equal Protection Class, as described below.

<u>Jurisdiction and Venue</u>

6.    This Court has jurisdiction over the § 1983 claims pursuant to 28 U.S.C. §

1331 and 28 U.S.C. § 1343(a)(3).

7.    Venue is appropriate in this District.  Each of the claims for relief arose in

this judicial district.

<u>Parties</u>

8.    Plaintiff Gregory Holloway is an adult who was held in the DC Jail for over six weeks after a Superior Court judge had ordered his placement in a halfway house.

9.    Plaintiff Karmese Washington is currently being overdetained in the CTF, more than six weeks (38 days) after a Superior Court judge ordered her placement in a halfway house.

10.    Plaintiff Ricky Robertson is an adult who was held in the DC Jail for over six weeks after a Superior Court judge had ordered his placement in a halfway house.  Mr. Robertson was not a prisoner in any facility when he moved for leave to be added as a plaintiff in this case.

> **Formatted:** Bullets and Numbering

11.    Defendant Government of the District of Columbia is a municipal corporation capable of being sued under D.C. Code § 1-102.

<u>Plaintiff Gregory Holloway's Overdetention By The DC Jail</u>

> **Formatted:** Bullets and Numbering

12.    On 7/8/03 a Superior Court judge committed Mr. Holloway and Mr. Robertson to the DC Jail in connection with Superior Court case F 2562-03.

13.    On 8/25/03 a Superior Court judge ordered Mr. Holloway and Mr. Robertson placed in a halfway house in case F 2562-03.

14.    However, Mr. Holloway and Mr. Robertson was held in the DC Jail until 9/19/03 when he was transferred to Hope Village halfway house.

15.    Mr. Holloway and Mr. Robertson was released on from the halfway house into his own custody on 10/24/03.

16.    The moving force behind Mr. Holloway and Mr. Robertson's overdetention

| Deleted: Holloway's |
| --- |

was the deliberate indifference by Defendant District of Columbia to the rights of persons to be placed in a halfway house after a judge has ordered their placement in a halfway house because the Department of Corrections has no effective inmate management system that can process inmates and ensure their timely placement in a halfway house, for many years the Department of Corrections understaffed its Records Office, and staff processed commitment orders in their own sweet time, staff were poorly trained, supervised and disciplined, and the Department of Corrections does not utilize the space it has.

6

17.    Mr. Holloway and Mr. Robertson suffered damages as a result of the

District's failure to place him in a halfway house after a judge ordered his

placement in a halfway house.

<u>Plaintiff Karmese's Washington's Overdetention By The DC Jail</u>

18.    On or about 6/20/05 a Superior Court judge committed Ms. Washington to

the DC Jail in connection with Superior Court case F 3435-05 pending payment of

a $200 bond.

19.    On about 624/05 a Superior Court judge ordered Ms. Washington placed in a

halfway house in case M 5744-03 and case number M 6184-05.

20.    Bond was posted for Ms. Washington in case F 3435-05, the bond receipt

was delivered to the DC Jail, and the Records Office discharged the bond hold on

6/25/05.

21.    However, as of 8/2/05, the date of filing of this amended complaint, Ms.

Washington remains held in the CTF.

22.    There are no commitment orders, bond or detainers justifying her continued

detention in CTF.

7

23.    The moving force behind Ms. Washington's overdetention is the deliberate
indifference by Defendant District of Columbia to the rights of persons to be
placed in a halfway house after a judge has ordered their placement in a halfway
house because the Department of Corrections has no effective inmate management
system that can process inmates and ensure their timely placement in a halfway
house, for many years the Department of Corrections understaffed its Records
Office, and staff processed commitment orders in their own sweet time, staff were
poorly trained, supervised and disciplined, and the Department of Corrections does
not utilize the space it has.

24.    Ms. Washington is suffering damages as a result of the District's failure to
place her in a halfway house after a judge ordered her placement in a halfway
house.

### Plaintiff Ricky Robertson's Overdetention By The DC Jail

25.    A Superior Court judge ordered Mr. Robertson placed in a halfway house in
case F 7722-03 and other cases on three separate occasions in his three
commitments during 2004-2005, 2003-2004, and 2003-2003.

26.    However, on each of these three commitments, Mr. Robertson was held in

8

the DC Jail for at least several weeks before being transferred to a halfway house.

27.    The moving force behind Mr. Robertson's overdetention was the deliberate indifference by Defendant District of Columbia to the rights of persons to be placed in a halfway house after a judge has ordered their placement in a halfway house because the Department of Corrections has no effective inmate management system that can process inmates and ensure their timely placement in a halfway house, for many years the Department of Corrections understaffed its Records Office, and staff processed commitment orders in their own sweet time, staff were poorly trained, supervised and disciplined, and the Department of Corrections does not utilize the space it has.

28.    Mr. Robertson suffered damages as a result of the District's failure to place him in a halfway house after a judge ordered his placement in a halfway house.

## FACTUAL ALLEGATIONS

### District Of Columbia's Pattern And Practice Of holding inmates in the DC Jail or the CTF after a judge orders their placement in a halfway house

29.    The Department of Corrections has a long and documented history of holding inmates in the DC Jail or the CTF after a judge has ordered their placement in a halfway house.

30.    The District of Columbia Central Detention Facility ("DC Jail") is the primary facility used by the Department of Corrections to house inmates in the District of Columbia.

31.    The DC Jail houses about 2,000 prisoners at any one time.

32.    Most of the prisoners at the DC Jail are either pre-trial detainees, misdemeanants serving sentences, or parole and probation violators.

33.    The Department of Corrections also houses prisoners in the District of Columbia in its Correctional Treatment Facility ("CTF").

34.    CTF is a freestanding, privately-run facility about 500 feet from the DC Jail building.

35.    Prisoners in CTF remain in the custody of the Department of Corrections.

36.    CTF houses about 700 individuals at any one time.

37.    Most prisoners detained in CTF are either pre-trial detainees, misdemeanants

serving sentences, or parole and probation violators.

38.    The Department of Corrections also houses prisoners at various halfway

houses located in the District of Columbia.

39.    On information and belief, approximately several hundred prisoners are

housed at various Department of Corrections halfway houses at any one time.

40.    Inmates housed at Department of Corrections halfway houses remain in the

custody of the Department of Corrections, although they are permitted to leave the

facilities in order to work, obtain drug or other substance abuse treatment, or for

other purposes.

## The Inmate Management System

Formatted: Bullets and Numbering

41.    The records office located at the DC Jail ("Records Office") is responsible for administering and maintaining the records, including the judgment and commitment files, of all persons housed at the DC Jail, CTF and the halfway houses.

42.    The Records Office is responsible for ensuring that all persons housed at the DC Jail, CTF and the halfway houses are tracked in the Department of Corrections' inmate management systems.

## The Department of Corrections Policy and Procedure for Booking Prisoners into and out of Department of Corrections' Custody

Formatted: Bullets and Numbering

43.    Currently, the Receiving and Discharge Offices ("R&D") located at the DC Jail is the only Department of Corrections facility where people are booked into and out of Department of Corrections' custody.

44.    A person not in custody of the Department of Corrections who is ordered placed into a halfway house by a judge is booked into the DC Jail and held their for a period of time before actually being transferred into a halfway house.

12

45.    During the class period, many persons ordered placed into a halfway house by a judge were either held in the DC Jail or the CTF and never placed in a halfway house, or held for days and weeks in the DC Jail or the CTF before being placed in a halfway house.

<u>The Cause of the Overdetention - Collapse of the Inmate Management
System and failure to utilize available space</u>

Formatted: Bullets and Numbering

46.    The cause of the overdetention problem is a deliberate indifference by Defendant District of Columbia to the rights of persons to be placed in a halfway house after a judge has ordered their placement in a halfway house because the Department of Corrections has no effective inmate management system that can process inmates and ensure their timely placement in a halfway house, for many years the Department of Corrections understaffed its Records Office, and staff processed commitment orders in their own sweet time, staff were poorly trained, supervised and disciplined, and the Department of Corrections does not utilize the space it has.

47.    The fact that the Department of Corrections for many years had no effective inmate management system has been documented by a series of reports and recommendations dating back at least 20 years.

48.    On October 5, 1999, John L. Clark, Corrections Trustee for the District of Columbia, prepared a Report to the United States Attorney General entitled, "Review of the Handling of Leo Gonzales Wright and Similar Offenders Sentenced by the U.S. District Court for the District of Columbia" (the "Wright Report").

49.    The Wright Report documented a long pattern of systemic problems dealing with case management, classification and records office management at the Records Office.  (Wright Report, Major Findings, F-14).

50.    Among the major findings of the Wright Report were a lack of adequate written policy and procedures resulting in out-of-date policies that either were being ignored or were ineffective, which resulted in an inmate records office management system that was "overwhelmed and in distress and suffering from years of prolonged inattention from top management."  (Wright Report, Major Findings, F-14 and F-20).

51.    The Wright Report also listed an extensive series of studies and recommendations that were "not seriously implemented" including studies dating back as far as 1976.  The studies mentioned and some of their principal recommendations were as follows:

a. <u>1976 RMC Research Corporation Analysis</u>.  Major Recommendations: reorganization of the Records Office and increased staffing in the office.

b. <u>1985 BOP Evaluation</u>.  Major Recommendations: creation of a headquarters level position at the Department of Corrections to provide guidance and written policy to the Records Office; increased Records Office staff; and restricted access to the Records Office and files.

c. <u>1986 DOC Security Workgroup Study</u>.  Major Recommendations: creation of a system of judgment and commitment files separate from central inmate files; restricted access to the Records Office and institutional files.

d. <u>1989 NIC Study</u>.  Major Recommendations: creation of a new records coordinator position with the person being given technical responsibility for the Records Office; standardization and organization of Records Office files; development of a staff training program; development of written policies and procedures; increased Records Office staffing.

e. <u>1997 BOP Re-Evaluation</u>.  Major Recommendations: establish a Records Administrator who reports to the Deputy Director (also recommended in 1985); establish an Inmate Training Officer; creation of a sentence computation manual; creation of a Records Office manual detailing policies and procedures.

**Formatted:** Bullets and Numbering

52.    The Wright Report stated that "most of the studies [have] had similar recommendations with little or no follow through by the DOC."  (Wright Report, "DOC Inmate Classification, Case Management, and Record Keeping," Chapter 3, p. 56).

53.    On July 28, 2000, in response to U.S. District Court Judge Royce Lamberth's April 12, 2000 Order to Show Cause, independent consultant John R Shaw prepared a Report and Recommendation concerning the erroneous release of Oscar Veal Jr. (the "Shaw Report").

54.    The Shaw Report indicated that major recommendations addressed in the Wright Report, and reiterated in the Shaw Report, were not addressed by the Department of Corrections.

55.    According to the Shaw Report, the Department of Corrections had no Records Office Administrator at the Headquarters level to supervise operations and institute training at the Records Office (Shaw Report, Major Findings, F-3).

56.    The Department of Corrections (according to the same report) has failed to provide the Records Office, charged with maintaining and processing inmate release and commitment orders, a written policy manual directing personnel how to perform their jobs. (Shaw Report, Major Findings, F-1).

57.    Employees of the DC Jail Records Office make up rules on an ad hoc basis. (Shaw Report, Major Findings, F-1).

58.    Employees in the DC Jail Records Office receive little or no training. (Shaw Report, Major Findings, F-2).

59.    Record keeping and file management at the Records Office is chaotic and slovenly and has been in this state since at least 1976, the date of the RMC Research Corporation Analysis, if not longer.  (Wright Report, "DOC Inmate Classification, Case Management, and Record Keeping, Chapter 3, p.54; Shaw Report, Major Findings, F-25 and F-26).

60.    The Shaw Report concludes that the Records Office "is in shambles. Records are strewn everywhere."  "There seems to be no accountability for record and file management."  (Shaw Report, Major Findings, F-26).

61.    The Shaw Report concluded that in addition to systemic problems at the Records Office, the office is staffed with under-performing employees who have been "dumped" there because of problems elsewhere.  (Shaw Report, Major Findings, F-27).

62.    On many days, less than one-half of the regularly scheduled employees needed to run the office show up for work.  (Shaw Report, Major Findings, F-30).

63.     Many other needed employees who do show up are routinely assigned to other departments in the jail.  (Shaw Report, Major Findings, F-30).

64.     The Shaw Report stated that the Records Office was in need of a complete overhaul.  (Shaw Report, Major Findings, F-22)

65.     On information and belief, many of the overdetention problems at Department of Corrections facilities are caused in part by Records Office employees inaccurately entering, or failing to enter, release or commitment data into the JACCS system.

66.     The Department of Corrections aggravated the backlog of overdetained inmates by eliminating the midnight to 8:00 a.m. shift in the Records Office.

75.     The Department of Corrections' policy of returning all court returns, even those whose cases have been dismissed, back to the DC Jail or CTF for processing swells the backlog of unprocessed inmates and is a major contributing cause of the Records Office's inability to process and release individuals on their Release Dates.

76.     The Department of Corrections' policy of returning all court returns, even those whose cases have been dismissed, back to the DC Jail or CTF for processing

costs taxpayers money, swells the population of the facilities unnecessarily, and causes inmate unrest.

77.    Moreover, jail officials have had personal knowledge of the problem for years.  For example, a 1998 memo by then Deputy Warden for Programs Mario L. Randle described the attitude of Records Office personnel as "a careless disregard for the public safety and the image and stature of the agency."

78.    Former Warden Patricia Britton was the subject of an April 12, 2000 show cause order issued by Judge Lamberth that resulted in the Shaw Report.

79.    Former Warden Patricia Britton was familiar with the findings in the Shaw Report when she was warden.

80.    The former Director of the Department of Corrections, Odie Washington, has been quoted in The Washington Post as stating he accepted the findings expressed in the Shaw Report.

<u>The Department of Corrections' Failure to Take Meaningful, Sustained Corrective Action for many years</u>

19

81.     Defendant District of Columbia acquiesced in the Records Office's chaotic and slovenly procedures leading to the overdetentions problems by failing to take any meaningful, sustained corrective action for many years.

82.     The Shaw Report found the Department of Corrections has no Record Office Administrator at the Headquarters level to analyze and implement the suggestions of consultants.  (Shaw Report, Major Findings, F-3).

83.     The Wright Report and the Shaw Report indicate that major recommendations of these reports and previous studies have not been implemented by the Department of Corrections.

84.     The Shaw Report found that the Department of Corrections' "attention to the problems in the DC Jail Record Office is worse than the Consultant concluded after the initial Veal [Shaw] Report was written."  (Shaw Report, Major Findings, F-22).

85.     The Shaw Report found that the Department of Corrections has not yet decided "to devote the time and resources needed to resolve the many problems that manifest themselves almost daily" at the Records Office.  (Shaw Report, Major Findings, F-22).

86.    The Department of Corrections and the District have known for years about the problem of not placing inmates in a halfway houses as ordered by judges because for many years the Department of Corrections has been publicly circulating lists of persons held in the DC Jail or the CTF after a judge has ordered their placement in a halfway house, along with the number of days they have been overdetained.

Adequate space for female inmates, inadequate space for male inmates

Currently, on the most recent list of persons held in the DC Jail awaiting placement in halfway houses, 25 are men, and only one is a woman.  The average for placement in a halfway house of perons on the list is six weeks.

87.    Until the past week, the Department of Corrections has always treated a commitment order to a halfway house as opposed to the DC Jail, as advisory, rather than as an order committing a person to the halfway house as opposed to the jail.

Overdetention Class – Class Action Allegations

Formatted: Bullets and Numbering

88.    Mr. Holloway, Ms. Washington, and Mr. Robertson and the Overdetention

Class bring this action on behalf of the Overdetention Class under Rules 23(a),

23(b) (2), and 23(b) (3) of the Federal Rules of Civil Procedure on behalf of a class

consisting of: (a) Each person who has been, is, or will be incarcerated in any

District of Columbia Department of Corrections facility in the three years

preceding the filing of this action up to and until the date this case is terminated;

and (b) who was held in the DC Jail or the CTF after a judicial officer ordered his

placement in a halfway house.

88.    Certification of the Overdetention Class under Federal Rule of Civil

Procedure 23(b)(2) is appropriate, because defendant District of Columbia has a

pattern and practice that has uniformly affected all members of the class, and

injunctive relief against the District will benefit plaintiff and each and every class

member.

89.    The Overdetention Class is entitled to injunctive relief, for example, setting

up an independent monitor to supervise the Department of Corrections' inmate

management system to ensure that all inmates are placed in a halfway house when

ordered, and other relief as specified below.

90.     Certification of the Overdetention Class under Federal Rule of Civil

Procedure 23(b)(3) is also appropriate, because common questions of law and fact

predominate over any individual questions, and a class action is superior for the

fair and efficient adjudication of this controversy as detailed below.

91.     Regarding Mr. Holloway, Ms. Washington, and Mr. Robertson and the

Overdetention Class, there are no individual questions on the issue of liability other

than whether an individual has been overdetained, and the answer to that question

can be determined by ministerial inspection of the Department of Corrections'

paper and computer records.

92.     Records available for inspection on the overdetentions include the lists

compiled by the Department of Corrections over the last several years of persons

overdetained person, Superior Court computer system and the Department of

Corrections computer systems (JACCS, CRISYS and the "Count" computer, all

defined below), R&D logbook of commitment and release orders and U.S.

Marshall Forms 40, and files, logbooks and other paper records maintained by the

Corrections Department.

93.     Among the questions of law and fact common to the Overdetention Class

are:

a)   whether the Constitution provides a bright line, maximum length of time measured in hours beyond which the District cannot hold an inmate in the DC Jail or the CTF after a judicial officer orders his placement in a halfway house;

b)   whether the District exceeded that maximum for each Overdetention Class member;

c)   whether Defendant District of Columbia has a pattern and practice of holding inmates in the DC Jail or the CTF after a judicial officer orders their placement in a halfway house;

d)   whether Defendant District of Columbia has a pattern and practice of being deliberately indifferent to the rights of inmates by holding inmates in the DC Jail or the CTF after a judicial officer orders their placement in a halfway house;

e)   whether Defendant District of Columbia's acts as alleged herein violate the Constitution of the United States by holding inmates in the DC Jail or the CTF after a judicial officer orders their placement in a halfway house;

f)   whether such policy, if found to exist, violates the Fourth and/or Fifth and/or Eighth Amendments;

g) whether plaintiff and Overdetention Class members have sustained damages and, if so, the proper measure of such damages;

h) whether determination of damages suffered by a statistically representative sample of the Overdetention Class provides the basis for determination of all class members' damages except those who opt out; and

i) whether plaintiff and the Overdetention Class members are entitled to equitable relief, and, if so, what is the nature of that relief.

93.    The class is so numerous that joinder of all members is impracticable.  The exact number of Overdetention Class members is unknown to plaintiffs at this time, but, based on lists of inmates held in the DC Jail or the CTF after a judge orders his placement in a halfway house compiled and published by the District, the class consists of at least several hundred people.

94.    Defendant District of Columbia has within its records the names and addresses of all the current and past Overdetention Class members.

95.    Another factor making joinder impracticable is that the Overdetention Class includes future inmates at Department of Corrections facilities, and the future population of such facilities is a group with fluid membership.

**Deleted:** Holloway's

96.     Mr. Holloway and Mr. Robertson's and Ms. Washington's claims are typical of the claims of the other Overdetention Class members, as plaintiff and all other members of the Overdetention Class were injured by exactly the same means, that is, by the overdetentions.

97.     Mr. Holloway and Mr. Robertson and Ms. Washington will fairly and adequately protect the interests of the members of the Overdetention Class and have retained counsel who are competent and experienced in complex federal civil rights class action litigation and/or complex federal prisoner rights litigation.

98.     Mr. Holloway and Mr. Robertson and Ms. Washington have no interests that are contrary to or in conflict with those of the Overdetention Class.

99.     Mr. Holloway and Mr. Robertson and Ms. Washington know of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a class action.  The class action will be manageable because so many different records systems exist from which to ascertain the members of the putative Overdetention Class, and damages can be calculated on a class wide basis using statistical methods.

Male Equal Protection Class - Class Action Allegations

100.   Mr. Holloway and Mr. Robertson and Mr. Robertson and the members of the Male Equal Protection Class bring this action on behalf of the Male Equal Protection Class under Rules 23(a), 23(b) (2), and 23(b) (3) of the Federal Rules of Civil Procedure on behalf of a class consisting of: (a) Each male person who has been, is, or will be incarcerated in any District of Columbia Department of Corrections facility in the three years preceding the filing of this action up to and until the date this case is terminated; and (b) who was held in the DC Jail or the CTF after a judicial officer ordered his placement in a halfway house.

101.   Certification of the class under Federal Rule of Civil Procedure 23(b)(2) is appropriate, because defendant District of Columbia has a pattern and practice that has uniformly affected all members of the class, and injunctive relief against the District will benefit plaintiff and each and every class member.

102.   The class is entitled to injunctive relief, for example, setting up an independent monitor to supervise the Department of Corrections' inmate management system to ensure that all inmates are placed in a halfway house when ordered, and other relief as specified below.

103.   Certification of the class under Federal Rule of Civil Procedure 23(b)(3) is

also appropriate, because common questions of law and fact predominate over any

individual questions, and a class action is superior for the fair and efficient

adjudication of this controversy as detailed below.

104.   Regarding Mr. Holloway and Mr. Robertson and Mr. Robertson and the

Male Equal Protection Class, there are no individual questions on the issue of

liability other than whether a male individual has been overdetained, and the

answer to that question can be determined by ministerial inspection of the

Department of Corrections' paper and computer records.

105.   Records available for inspection on the overdetentions include the lists

compiled by the Department of Corrections over the last several years of persons

overdetained person, Superior Court computer system and the Department of

Corrections computer systems (JACCS, CRISYS and the "Count" computer, all

defined below), R&D logbook of commitment and release orders and U.S.

Marshall Forms 40, and files, logbooks and other paper records maintained by the

Corrections Department.

106.   Among the questions of law and fact common to the class are:

a)   whether the Constitution prohibits the District from holding male inmates in the DC Jail or the CTF after judicial officers have ordered their placement in a halfway house, while promptly placing female inmates in halfway houses in accordance with the terms of their commitment orders;

b)   whether Defendant District of Columbia has a pattern and practice of holding male inmates in the DC Jail or the CTF after judicial officers have ordered their placement in a halfway house, while promptly placing female inmates in halfway houses in accordance with the terms of their commitment orders;

c)   whether Defendant District of Columbia has a pattern and practice of being deliberately indifferent to the rights of male inmates by holding male inmates in the DC Jail or the CTF after judicial officers have ordered their placement in a halfway house, while promptly placing female inmates in halfway houses in accordance with the terms of their commitment orders;

d)   whether Defendant District of Columbia's acts as alleged herein violate the Constitution of the United States by holding male inmates in the DC Jail or the CTF after judicial officers have ordered their placement in a halfway house, while promptly placing female inmates in halfway houses in accordance with the terms of their commitment orders;

29

e) whether such policy, if found to exist, violates the equal protection component

of the Fifth Amendments;

f) whether plaintiffs and the Male Equal Protection Class members have sustained

damages and, if so, the proper measure of such damages;

Deleted: plaintiff

g) whether determination of damages suffered by a statistically representative

sample of the Male Equal Protection Class provides the basis for determination

of all class members' damages except those who opt out; and

h) whether plaintiffs and the Male Equal Protection Class members are entitled to

equitable relief, and, if so, what is the nature of that relief.

Deleted: plaintiff

i) The Male Equal Protection Class is so numerous that joinder of all members is

impracticable.  The exact number of Male Equal Protection Class members is

unknown to plaintiffs at this time, but, based on lists of inmates held in the DC

Jail or the CTF after a judge orders his placement in a halfway house compiled

and published by the District, the class consists of at least several hundred

people.

j) Defendant District of Columbia has within its records the names and addresses

of all the current and past Male Equal Protection Class members.

30

k) Another factor making joinder impracticable is that the Male Equal Protection

Class includes future inmates at Department of Corrections' facilities, and the

future population of such facilities is a group with fluid membership.

l) Mr. Holloway and Mr. Robertson's and Mr. Robertson's claims are typical of

the claims of the other Male Equal Protection Class members, as plaintiff and

all other members of the Male Equal Protection Class members were injured by

exactly the same means, that is, by the overdetentions of men.

m) Mr. Holloway and Mr. Robertson and Mr. Robertson will fairly and adequately

protect the interests of the members of the Male Equal Protection Class

members and has retained counsel who are competent and experienced in

complex federal civil rights class action litigation and/or complex federal

prisoner rights litigation.

n) Mr. Holloway and Mr. Robertson have no interests that are contrary to or in

conflict with those of the Male Equal Protection Class members.

o) Mr. Holloway and Mr. Robertson know of no difficulty that will be encountered

in the management of this litigation that would preclude its maintenance as a

class action. The class action will be manageable because so many different

31

**Deleted:** Corrections

**Deleted:** Holloway's

**Deleted:** has

**Deleted:** knows

records systems exist from which to ascertain the members of the putative Male

Equal Protection Class, and damages can be calculated on a class wide basis

using statistical methods.

CLAIMS

Count 1

§ 1983 Respondeat Superior Liability of Defendant District of Columbia

for the Constitutional Violations of its Employees

107.   Mr. Holloway, Ms. Washington, and Mr. Robertson and the Overdetention

Class and the Male Equal Protection Class reallege and incorporate by reference all

allegations set forth in the preceding paragraphs of this Complaint.

108.   District of Columbia employees caused the intentional, unjustified

overdetention of Mr. Holloway, Ms. Washington, and Mr. Robertson and the

Overdetention Class and Male Equal Protection Class members by deliberate

indifference to the risk of constitutional injury of overdetention.

109.   Overdetaining any person violates that person's Fourth and Fifth and Eighth

Amendment rights.

32

110.   District of Columbia employees continue in certain of such conduct up to and including the present.

111.   At all relevant times such District of Columbia employees were acting within the scope of their employment, their acts were motivated by a desire to further the interests of the District of Columbia, and such District of Columbia employees were acting in furtherance of the business of the District of Columbia.

112.   Defendant District of Columbia is therefore liable by virtue of respondeat superior under 42 U.S.C. § 1983 for constitutional injuries to Mr. Holloway and Mr. Robertson and the class caused by the conduct of such employees.

Count 2

Overdetention Class

§ 1983 Monell Custom and Practice Direct Liability of District of Columbia for

Violation of Fourth, Fifth and Eighth Amendment Rights

113.   Mr. Holloway, Ms. Washington, and Mr. Robertson and the Overdetention

Class reallege and incorporate by reference all allegations set forth above in this

Complaint.

114.   District of Columbia employees caused the intentional, unjustified

overdetention of Mr. Holloway, Ms. Washington, and Mr. Robertson and the

Overdetention Class members by deliberate indifference to the risk of

constitutional injury of overdetention.

115.   Defendant District of Columbia was at all times relevant the municipality in

charge of the DC Jail, CTF and other Department of Corrections facilities.

116.   Defendant District of Columbia deliberately failed to train, supervise and

discipline its employees charged with monitoring and ensuring placement of

inmates in Department of Corrections' facilities in accordance with their

commitment orders.

117.   There was an obvious, clear and present need for Defendant District of Columbia to train, supervise and discipline employees charged with monitoring and ensuring placement of inmates in Department of Corrections' facilities in accordance with their commitment orders and Defendant District of Columbia did not train, supervise and discipline them.

118.   The pattern of unconstitutional conduct that Mr. Holloway, Ms. Washington, and Mr. Robertson and the Overdetention Class complain of was so pervasive that Defendant District of Columbia and its policy makers had actual and constructive notice of the need for training, supervision and discipline.

119.   Defendant District of Columbia had both actual and constructive knowledge that employees charged with monitoring and ensuring placement of inmates in Department of Corrections facilities in accordance with their commitment orders were engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to Mr. Holloway and Mr. Robertson and the class and all other individuals confined at a Department of Corrections facility.

120.   Defendant District of Columbia's policymakers engaged in a pattern of continued inaction in the face of the deliberate indifference of employees charged with monitoring and ensuring placement of inmates in Department of Corrections'

35

facilities in accordance with their commitment orders in violation of the Fourth, Fifth and Eighth Amendment rights of such individuals.

121.   Defendant District of Columbia's actions, and failure to act, as described above, and deliberate indifference, directly and proximately and affirmatively were the moving force behind the violations of Mr. Holloway, Ms. Washington, and Mr. Robertson and the Overdetention Class members' Fourth, Fifth and Eighth Amendment rights.

122.   Defendant District of Columbia's policy, custom and practice described above were the moving force behind the deprivations to Mr. Holloway, Ms. Washington, and Mr. Robertson and the Overdetention Class members' Fourth, Fifth and Eighth Amendment rights.

123.   Defendant District of Columbia's actions, and failure to act, as described above, directly and proximately caused and was the moving force behind, Mr. Holloway, Ms. Washington, and Mr. Robertson and the Overdetention Class members' injury as described above.

Count 3

Male Equal Protection Class

§ 1983 Monell Custom and Practice Direct Liability of District of Columbia for

Violation of equal protection component of the Fifth Amendment

124.   Mr. Holloway and Mr. Robertson and the Male Equal Protection Class

reallege and incorporate by reference all allegations set forth above in this

Complaint.

125.   District of Columbia employees caused the intentional, unjustified

overdetention of Mr. Holloway and Mr. Robertson and all other Male Equal

Protection Class members by deliberate indifference to the risk of constitutional

injury of overdetention.

126.   Defendant District of Columbia was at all times relevant the municipality in

charge of the DC Jail, CTF and other Department of Corrections facilities.

127.   Defendant District of Columbia deliberately failed to train, supervise and

discipline its employees charged with monitoring and ensuring placement of

inmates in Department of Corrections' facilities in accordance with their

commitment orders.

37

128.   There was an obvious, clear and present need for Defendant District of Columbia to train, supervise and discipline employees charged with monitoring and ensuring placement of inmates in Department of Corrections facilities in accordance with their commitment orders and Defendant District of Columbia did not train, supervise and discipline them.

129.   The pattern of unconstitutional conduct that Mr. Holloway and Mr. Robertson and the Male Equal Protection Class complain of was so pervasive that Defendant District of Columbia and its policy makers had actual and constructive notice of the need for training, supervision and discipline.

130.   Defendant District of Columbia had both actual and constructive knowledge that employees charged with monitoring and ensuring placement of inmates in Department of Corrections facilities in accordance with their commitment orders were engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to Mr. Holloway and Mr. Robertson and the Male Equal Protection Class and all other individuals confined at a Department of Corrections facility.

131.   Defendant District of Columbia's policymakers engaged in a pattern of continued inaction in the face of the deliberate indifference of employees charged

with monitoring and ensuring placement of male inmates in Department of

Corrections' facilities in accordance with their commitment orders in violation of

**Deleted:** Corrections

the Equal Protection Clause/ Fifth Amendment rights of such individuals.

132.   Defendant District of Columbia's actions, and failure to act, as described

above, and deliberate indifference, directly and proximately and affirmatively were

the moving force behind the violations of Mr. Holloway and Mr. Robertson and the

class and all other Male Equal Protection Class' Equal Protection Clause/ Fifth

Amendment rights.

133.   Defendant District of Columbia's policy, custom and practice described

above were the moving force behind the deprivations to Mr. Holloway and Mr.

Robertson and the class and all other Male Equal Protection Class' Equal

Protection Clause/ Fifth Amendment rights.

134.   Defendant District of Columbia's actions, and failure to act, as described

above, directly and proximately caused and was the moving force behind, Mr.

Holloway and Mr. Robertson and the Male Equal Protection Class's injury as

described above.

## IRREPARABLE INJURY AND INJUNCTIVE RELIEF

135.   Defendant is overdetaining members of the plaintiff classes, which

irreparably harms them, even if they are later able to recover compensatory

damages.

136.   Defendant's overdetaining members of the plaintiff classes has irreparably

harmed, and will continue to irreparably harm, members of the proposed plaintiff

Classes, thus making declaratory and injunctive relief necessary.

## PRAYER FOR RELIEF

WHEREFORE, plaintiffs respectfully request that this Court

grant the following relief:

1.          grant a jury trial on all claims so triable;

2.          declare that this action may be maintained as a class action pursuant to

Federal Rule of Civil Procedure 23(b)(2) and 23(b)(3) and certifying Mr. Holloway

and Mr. Robertson and Ms. Washington as the proper representatives of the

Overdetention Class consisting of each person: (a) who has been, is, or will be

incarcerated in any District of Columbia Department of Corrections facility in the

three years preceding the filing of this action up to and until the date this case is

terminated; and (b) who was held in the DC Jail or the CTF after a judicial officer

ordered his or her placement in a halfway house.

3.        declare that this action may be maintained as a class action pursuant to

Federal Rule of Civil Procedure 23(b)(2) and 23(b)(3) and certifying Mr. Holloway

and Mr. Robertson as the proper representative of the Male Equal Protection Class

consisting of each male person: (a) who has been, is, or will be incarcerated in any

District of Columbia Department of Corrections facility in the three years

preceding the filing of this action up to and until the date this case is terminated;

and (b) who was held in the DC Jail or the CTF after a judicial officer ordered his

placement in a halfway house.

4.        appoint William Claiborne and Barrett Litt (Mr. Litt will move for pro

hac vice admission) as class counsel;

5.        declare that the District's acts alleged above violate the Fourth, Fifth

and Eighth Amendments to the Constitution by overdetaining plaintiffs as alleged

herein;

6.        preliminarily and permanently enjoin the District from pursuing the

course of conduct complained of herein;

41

7.    preliminarily and permanently enjoin the District from pursuing settlement directly with any member of the putative Class described herein unless that person is represented by counsel;

8.    award all plaintiffs compensatory and consequential damages in an amount to be determined;

9.    appoint an independent monitor to supervise the Records Office to ensure that all inmates are placed in a halfway house when a judge has ordered their placement in a halfway house;

10.    appoint an independent monitor to supervise the R&D Offices to ensure that all inmates are placed in a halfway house when a judge has ordered their placement in a halfway house;

11.    award plaintiffs attorneys' fees and costs incurred in bringing this action under 42 U.S.C. § 1988; and

12.    grant such other relief as this Court deems just and proper.


Respectfully submitted,

_____
WILLIAM CLAIBORNE
D.C. Bar # 446579
Counsel for Mr. Holloway and Mr.
Robertson and Ms. Washington and the
classes

717 D Street, NW
Suite 210
Washington, DC 20004
Phone 202/824-0700
Fax 202/824-0745
law@claiborne.net

JURY DEMAND

Plaintiffs demand a jury of six as to all claims so triable.

WILLIAM CLAIBORNE
D.C. Bar # 446579
Counsel for Mr. Holloway and Mr.
Robertson and Ms. Washington and the
classes

Deleted: _____¶

DATED: September 2, 2005

Deleted: August

43