UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

GREGORY HOLLOWAY            )
                           )
        Plaintiffs          )        05-1502 (RCL)
                           )        Next event: no event scheduled
        v.                  )
                           )
GOVERNMENT OF THE           )
THE DISTRICT OF COLUMBIA,   )
                           )
                Defendant   )

## PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

Defendant's motion to dismiss plaintiffs' Second Amended Complaint[1] as

corrected (docket # 5) should be denied for the reasons that (1) the release in the

Bynum Settlement Agreement does not preclude the Holloway overdetention claims

because the two cases are different; (2) the release in the Bynum Settlement

---

[1] Defendant consented to plaintiffs' motion to amend their First Amended Complaint by filing their Second Amended Complaint, and agreed to direct their motion to dismiss to the Second Amended Complaint as corrected (docket # 5). The Second Amended Complaint as corrected (docket # 5) is erroneously styled "First Amended Complaint." Defendant's motion to dismiss does not argue that plaintiffs fail to state a claim. Instead, defendant argues that the claim is precluded by the release in the Bynum Settlement Agreement, and by the anti-injunction provision in the Bynum preliminary approval order.

1

Agreement, analyzed under the "objective law" of contract interpretation standard formulated by the District of Columbia Court of Appeals in <u>Patterson v. District of Columbia</u>, 795 A.2d 681, 683 (D.C. 2002) and followed in this Court, does not release the Holloway overdetention claims (<u>see</u> <u>Carter v. Rubin</u>, 14 F. Supp. 2d 22 (D.D.C. 1998)(burden on defendant to show that release that expressly released one discrimination claim also released different, non-class discrimination claim)); (3) the Holloway class members cannot be bound by the Bynum settlement because they are not receiving class notice or credit under the proposed class distribution formula for the failure to place them in a halfway house; and (4) the Bynum preclusion against filing new lawsuits injunction does not apply to Holloway class members because by its terms the injunction in the Bynum preliminary approval order applies only to Bynum class members and the claims released by the Bynum Settlement Agreement, and the Holloway class members are not Bynum class members, and the Bynum Settlement Agreement did not release their claims.

Defendant's theory of release preclusion[1] is based on the erroneous premise that the Holloway named plaintiffs and the putative Holloway class members are members of the Bynum Overdetention Class, because (as defendant contends) both cases state overdetention claims (defendant's motion to dismiss, pages 4 and 5), and (as defendant contends) "[b]oth attribute the over-detention to the same set of circumstances," (defendant's motion to dismiss, page 5).  Both of these contentions are wrong, as explained below.

The burden[2] is on defendant, as the party asserting the affirmative defense of claim preclusion, to produce evidence showing that the release in the Bynum Settlement Agreement precludes the Holloway claims.  See Carter v. Rubin, 14 F. Supp. 2d 22 (D.D.C. 1998); Fed. R. Civ. P. 8(c).  However, defendant fails to carry

---

[1] A release is, in effect, the contractual version of claim preclusion: an agreement not to assert specified claims against one's adversary in any future proceeding.  See Restatement (Second) of Judgments 27.  Release preclusion is an affirmative defense.  Fed. R. Civ. P. 8(c) ("In pleading to a preceding pleading, a party shall set forth affirmatively... release [and] res judicata....").

[2] Essentially, defendants filed a "no-evidence motion" based upon their own affirmative defense. Under Rule 56(c), in order to defeat summary judgment dismissing any affirmative defense, Defendants must make a showing sufficient to establish the existence of an element essential to that affirmative defense. United States v. Philip Morris USA, Inc., 327 F. Supp. 2d 1, 6 (D.D.C., 2004) citing Celotex Corp. v. Catrett, 477 U.S. 317 (1986); Wishom v. Hill, 2004 U.S. Dist. LEXIS 2172, *34 (D. Kan. 2004).

this burden.  Defendant does not analyze the elements of the claims, or the relevant facts they depend on, nor analyze the release in the Bynum Settlement Agreement under the "objective law" of contract interpretation standard formulated by the District of Columbia Court of Appeals in <u>Patterson v. District of Columbia</u>, 795 A.2d 681, 683 (D.C. 2002) and followed in this Court.  Defendant offers no evidence or analysis in support of its affirmative defense beyond the bald observation that both cases allege overdetention claims, and both cases attribute the overdetentions to the same set of circumstances.

But this bald observation is wrong on both counts.  First, the mere fact that both claims are *labeled* overdetention claims does not mean they are the same overdetention claim.  The overdetention claims and the overdetention class definitions alleged in the two cases are substantively different because they have different elements, and depend on different factual predicates.  The Bynum claim complains that the **duration** of a person's confinement in the Department of Corrections facility was too long, because it was in excess of the court ordered release date.  The Holloway claim complains of the **location** of a person's confinement, because the confinement was served in the jail or CTF, instead of in a halfway house, without regard to the **duration** of the confinement.  Thus, the gravamen of Bynum the complaint is that individuals are being retained in

4

Department of Corrections custody when they are no longer supposed to be in custody, whereas the gravamen of the Holloway complaint is that individuals are allowed to be in Department of Corrections custody but are supposed to be in a certain type of custody location, to with, a halfway house.

Secondly, it is incorrect to say that both cases attribute the overdetentions to the same set of circumstances. The Holloway overdetention claim depends on facts not alleged in the Bynum complaints, and not necessary to the Bynum overdetention claim, such as defendant did not utilize the bed space it had available in existing halfway houses, Second Amended Complaint ¶ ¶ 16, 23, 27, 46, paragraph heading that precedes ¶ 46, and the Department of Corrections treated commitment orders requiring placement in a halfway house as advisory rather than mandatory, Second Amended Holloway Complaint, ¶ 87.

Defendant's motion fails because it relies on a cursory glance at labels, and fails to see that the two different cases state "overdetention" whose only point of similarity is that they both can be characterized by the phrase "overdetention", but which fundamentally differ in their elements and which depend on different factual predicates. Moreover, defendant, distracted by labels, fails to analyze the terms of the release in the Bynum Settlement Agreement under the correct legal standard, the Patterson "objective law" standard.

Applying the correct legal standard to the facts of this case, the release in the Bynum Settlement Agreement does not preclude the Holloway case. A careful reading of the two complaints, the class definitions forth in the complaints and this Court's orders in Bynum, the facts alleged in support of the different claims, and consideration of "all the circumstances before and contemporaneous with the making of the [Bynum Settlement A]greement [1]," such as the computer data used by the Bynum parties in identifying class members and sending notice and computing awards under the point system set forth in the proposed final approval order, shows that the "overdetention" claims and the "overdetention" class definitions alleged in the two cases are different, and that the parties did not intend the release in the Bynum Settlement Agreement to release the Holloway claims.

## I.    BACKGROUND

1.    The Bynum Class filed their original class action complaint on May 16, 2002.

2.    This Court certified an Overdetention Class on March 31, 2003, defined as:

---

[1] Under the "objective law" of contract interpretation prevailing in the District of Columbia, the objective reasonable person assessing the contract's language "is presumed to know all the circumstances before and contemporaneous with the making of the agreement," and extrinsic evidence is admissible to determine the nature of those circumstances, even in the absence of ambiguity.  Patterson v. District of Columbia, 795 A.2d 681, 683 (D.C. 2002).

(a) Each person who has been, is, or will be incarcerated in any

District of Columbia Department of Corrections facility in the

three years preceding the filing of this action up to and until the

date this case is terminated; and (b) who was not released, or, in

the future, will not be released by midnight on the date on which

the person is entitled to be released by court order or the date on

which the basis for his or her detention has otherwise expired.

Bynum v. District of Columbia[1], 214 F.R.D. 27, 42 (D.D.C. 2003) ("Bynum I").

3.       On June 3, 2005, the District of Columbia Circuit Court of Appeals decided

that holding a person in the DC Jail or CTF after a judge has ordered his placement

in a halfway house is actionable under the Constitution through § 1983.  Taylor v.

United States Prob. Office, 409 F.3d 426 (D.C. Cir. 2005)( success in his action will

demonstrate nothing more than the unlawfulness of his placement at the DC Jail

location instead of in a halfway house, without regard to length of confinement).

---

[1] This Court subsequently certified a Strip Search Class on **August 11, 2003 in**
Bynum v. District of Columbia, 217 F.R.D. 43 (D.D.C. 2003) ("Bynum II").
Defendant does not contend that the Strip Search Class definition bars any of the
Holloway Class overdetention claims.

4.    On June 16, 2005 the parties in Bynum filed a motion asking the Court to approve the Bynum Settlement Agreement and the attached exhibits.  (Bynum docket # 116).

5.    On July 29, 2003, Mr. Holloway filed his original complaint in this case, and filed papers relating it to Bynum v. Gov't of District of Columbia, 02-965(RCL). (Holloway docket # 1, 7/29/05).

6.    On August 31, 2005, this Court entered an order preliminarily approving the Bynum Class settlement.  Bynum v. Gov't of the Dist. of Columbia, 384 F. Supp. 2d 342 (D.D.C. 2005). (Bynum docket # 128).

7.    On September 2, 2005, the Holloway named plaintiffs filed their Second Amended Complaint[1] (docket # 4, 9/2/05), as corrected on September 6, 2005, (docket # 5, 9/6/05).

8.    None of the named plaintiffs in Bynum is a named plaintiff in this case.

_____

[1] Defendant consented to plaintiffs' motion to amend their First Amended Complaint by filing their Second Amended Complaint, and agreed to direct their motion to dismiss to the Second Amended Complaint as corrected (docket # 5).  The Second Amended Complaint as corrected (docket # 5) is erroneously styled "First Amended Complaint."

9.    None of the Bynum named plaintiffs asserted a Holloway claim, that is, none of the Bynum named plaintiffs alleged that he had been held in the DC Jail or CTF after a judicial officer had ordered him placed in a halfway house.

10.    The Holloway complaints allege that defendant singles out women for placement in the halfway house so that men, and not women, are detained in the DC Jail and CTF after being ordered placed in the halfway house.

11.    The complaint alleges that defendant's failure to utilize the space it has in halfway houses is a contributing cause of the Holloway overdetentions.

12.    The proposed Overdetention Class class definition in the corrected Holloway Second Amended Complaint is:

> (a) Each person who has been, is, or will be incarcerated in any District of Columbia Department of Corrections facility in the three years preceding the filing of this action up to and until the date this case is terminated; and (b) who was held in the DC Jail or the CTF after a judicial officer ordered his placement in a halfway house.

(docket #, 4, 9/2/05; docket # 5, 9/2/05).

13.     The proposed Male Equal Protection Class[1] class definition in the corrected

Holloway Second Amended Complaint is:

> (a) Each male person who has been, is, or will be incarcerated in any
>
> District of Columbia Department of Corrections facility in the three
>
> years preceding the filing of this action up to and until the date this case
>
> is terminated; and (b) who was held in the DC Jail or the CTF after a
>
> judicial officer ordered his placement in a halfway house.

(docket #, 4, 9/2/05; docket # 5, 9/2/05).

## II.     RELEASE IN BYNUM SETTLEMENT AGREEMENT DID NOT RELEASE THE HOLLOWAY CLAIMS

In this case, once the facts are sorted out and carefully analyzed, it becomes

apparent that the Bynum overdetention claim is different from the Holloway

overdetention claim, and that the release in the Bynum Settlement Agreement did

not release, and under the due process rules applicable to the rights of absent class

---

[1] All 3 versions of plaintiffs' complaint, the original complaint, the First Amended Complaint, and the Second Amended Complaint, state the Male Equal Protection Class.

members[1] , could not have released, the overdetention claims of the Holloway class members.

As plaintiffs establish below, the claims are different in several critical respects: 1) no Bynum named plaintiff stated a claim for a Holloway type overdetention claim in any of the Bynum complaints, 2) no absent Bynum class member will be sent notice of any purported release of his Holloway claim because the computer data defendant produced to plaintiffs in response to this Court's discovery order for the purpose of identifying class members and sending them notice did not contain fields necessary to identify Holloway claimants, and 3) the point system scheme negotiated by the parties, and preliminarily approved by this Court, does not provide compensation for any Holloway claimant (person

---

[1] In order for the Bynum Settlement Agreement to release the Holloway money damages claims of the absent class members, the Bynum class notice would have to give notice and an opportunity to opt out to the absent class members with Holloway claims. In re Veneman, 309 F.3d 789, 792 (D.C. Cir. 2002); Pigford v. Veneman, 355 F. Supp. 2d 148, 161 (D.D.C. 2005). In this case, since the names and addresses of the claimants are in the Department of Corrections JACCS database, that would have required individual notice. See Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 174-75 (1974); Fed. R. Civ. P. 23(c)(2)(B) (the "best notice practicable" includes "individual notice to all members who can be identified through reasonable effort."). However, defendant did not produce to plaintiffs records from the JACCS database needed to identify Holloway claimants, and so no attempt was made to send them notice. To be effective, a release of non-class claims of absent class members must be a knowing release made after notice and an opportunity to be heard. See Matsushita Elec. Indus. Co., Ltd., v. Epstein, 516 U.S. 367, 379 (1996).

overdetained in the DC Jail or the CTF after the date he was to have been placed in a halfway house, regardless of whether he was released on time from Department of Corrections custody).

Once it is clear that defendant's factual premise is incorrect, defendant's release preclusion argument collapses like a house of cards. Defendant's motion to dismiss applies the release preclusion legal standards to an incorrect factual premise, and so reaches an erroneous conclusion. Application of the release preclusion standards to the actual facts of the case shows that the release in the Bynum Settlement Agreement does not preclude either of the Holloway overdetention claims.

A.    **The Facts: Holloway Class Members Are Not Members Of The Bynum Class, And The Holloway Claim Depends On Different Facts**

Both Bynum and Holloway state overdetention claims[1], but they state different types of overdetention claims. See <u>Carter v. Rubin</u>, 14 F. Supp. 2d 22 (D.D.C. 1998)(distinguishing between "race" **discrimination** claims and "gender" **discrimination** claims by analyzing the legal elements of the claims rather than

_____

[1]See Restatement (Second) of Judgments 18 (1982), distinguishing between the term "claim" and the term "cause of action."

12

looking at the generic terms of the labels). The Bynum Overdetention Claim sought relief for persons held in District of Columbia Department of Corrections' custody after their court ordered release dates (their release from Department of Corrections' custody). In contrast, the Holloway Overdetention Claim[1] seeks relief for holding a person in Department of Corrections' custody in either the DC Jail or CTF after a judge has ordered his placement in a halfway house, without regard to whether he was confined past his court ordered release date. Taylor, 409 F.3d at 427.

Courts recognize many different types of overdetention claims: overdetention by failing to present a person arrested in a warrantless arrest to a judicial officer in a reasonable amount of time, County of Riverside v. McLaughlin, 500 U.S. 44, 111 S.Ct. 1661 (1991) (detention for 48 hours without probable cause determination presumed unreasonable); overdetention by failing to release person arrested on wrong warrant, Baker v. McCollan, 443 U.S. 137 (1979) (inmate held over three day New Year's weekend after being arrested on a wrong warrant does not state cause of action under due process clause); overdetention by failing to release inmate from custody after expiration of basis to hold him, Young v. City of Little Rock, 249 F.3d 730, 736 (5th Cir. 2001); overdetention by failing to grant timely parole hearing, see

---

[1]

Long v. Gaines, 241 F. Supp. 2d 1 (D.D.C. 2002); overdetention by holding a person in the DC Jail or CTF after a judge has ordered his placement in a halfway house, Taylor v. United States Prob. Office, 409 F.3d 426, 429 (D.C. Cir. 2005)(gravamen of Taylor's complaint is that his confinement at the CDF location rather than at a halfway house was unlawful).  In fact, the District of Columbia Circuit Court of Appeals, in a case involving the Department of Corrections, recognized the Holloway overdetention claim as a separate species of overdetention claim just a few weeks before the Bynum parties submitted the Bynum Settlement Agreement to the Court.  Taylor, 409 F.3d at 430.

Despite traveling under the common label of "overdetention claim," each one of these overdetention claims is different, because each one has different elements and each one relies on different factual predicates.  Moreover, none of these claims is "typical" of the other under Fed. R. Civ. P. 23(a)(3), unless the class definition is specifically crafted to include more than one claim. The Bynum overdetention claim is triggered by holding an inmate in any facility of the Department of Corrections past his court ordered release date, or the date the basis for his detention has otherwise expired.  In contrast, the Holloway overdetention claim challenges continued detention at the DC Jail or CTF location after a judicial officer has ordered placement in a halfway house (while still in Department of Corrections'

custody during his lawful period of confinement).  <u>Taylor v. United States Prob.</u>

<u>Office</u>, 409 F.3d 426, 430 (D.C. Cir. 2005)(success in his action will demonstrate

nothing more than the unlawfulness of his placement at the DC Jail location instead

of in a halfway house).

Moreover, the Holloway overdetention claim depends on facts not alleged in

Bynum, and not necessary to the Bynum overdetention claim, such as defendant did

not utilize the bed space it had available in existing halfway houses, Second

Amended Complaint ¶ ¶ 16, 23, 27, 46, heading before ¶ 46, and the Department of

Corrections treated commitment orders requiring placement in a halfway house as

advisory rather than mandatory, Second Amended Holloway Complaint, ¶ 87.

### 1.    *Bynum Overdetention Claim.*

The elements of a Bynum overdetention claim is that a person was (1) held in

Department of Corrections' custody (2) past his court ordered release from that

custody.  In the defined terms employed in Bynum, an inmate states an

overdetention claim when his Exit Date (date an inmate was actually released from

Department of Corrections' custody) falls after his Release Date (date an inmate was

entitled to release from Department of Corrections' custody).  Thus the key event

dates in a Bynum overdetention claim  are when the inmate should have been

released from Department of Corrections' custody, and when he actually got

released from Department of Corrections' custody.  Where in Department of Corrections' custody the inmate was held is not an element of the Bynum overdetention cause of action.  Second, the fact that triggers the cause of action (and thus his claim for relief) is being held in Department of Corrections' custody past the midnight on the date on which "the person is entitled to be released by court order or the date on which the basis for his or her detention has otherwise expired." Bynum class definition, preliminary approval order.  It is **continued confinement in Department of Corrections' custody past the expiration of the basis of the person's confinement** that is the actionable conduct in the Bynum overdetention claim.  Third, the gender of the claimant is irrelevant in the Bynum Overdetention Class definition.  Finally, the Bynum complaint attributes the overdetentions to the collapse of the inmate management systems, and the acquiescence of the defendant to that collapse.  The Bynum complaint does not allege that failing to use halfway house space and treating halfway house commitment orders as advisory contributed to the Bynum overdetention claim problems, and the Bynum overdetention claim does not depend on these facts.

### 2.    *Holloway Overdetention Claims.*

### a)    <u>*The Holloway simple Overdetention Class*</u>

The Holloway simple Overdetention Class is completely different from the Bynum Overdetention Class. The elements of each claim substantially differ, and thus neither claim subsumes the other. Similarly, the Holloway claim rests on factual predicates not relevant to the Bynum overdetention claim.

The elements of a "simple" Holloway overdetention claim are (1) being held in the DC Jail or CTF, (2) after being ordered placed in a halfway house.  The key event dates in a Holloway type overdetention claim are the "Court Ordered Placement Date" and the "Actual Placement Date."  A Court Ordered Placement Date is the court ordered date by which a person was to be placed in a halfway house.  An Actual Placement Date is the date an inmate was actually placed in a halfway house.  What triggers inclusion in the Holloway case is having an Actual Placement Date that falls after a Court Ordered Placement Date.  Whether a person was held past his Release Date from Department of Corrections' custody is not an element.

As the <u>Taylor</u> Court phrased it, "If Taylor succeeds in his action, this will demonstrate nothing more than the unlawfulness of his placement at the CDF

location instead of a halfway house.  Success in this case will in no way imply that any confinement of Taylor was invalid **or that the duration of his confinement should have been shorter**."  (emphasis added).  <u>Taylor v. United States Prob. Office</u>, 409 F.3d 426, 430 (D.C. Cir. 2005).  The crucial distinction between a Bynum overdetention claim and a Holloway overdetention claim is that a Holloway claimant can be overdetained in the DC Jail or CTF even if he is ultimately released from Department of Corrections' custody on his Release Date.  The fact that triggers the Holloway claim, and inclusion in the Holloway class, is being held in one of two specified Department of Corrections facilities (DC Jail or CTF) after a judicial officer has ordered placement in a halfway house, also a Department of Corrections facility.  Holloway Class members state a claim regardless of whether they were overdetained in Department of Corrections' custody after their Release Dates.  The Court Ordered Placement Date is not an element of the Bynum type overdetention claim, because the Bynum type overdetention claim provides a remedy for overdetention in Department of Corrections' custody, regardless of location, and not a remedy for detention in the DC Jail or CTF instead of a halfway house.

b)      *Holloway Male Equal Protection Claim.*

Moreover, the Holloway Male Equal Protection Claim states a claim for men only, alleging that the Department of Corrections discriminated against males on the

basis of their gender in failing to place them in halfway house when ordered to do so by a judicial officer by providing adequate halfway house space for women but not men.

Therefore, Bynum class members are not entitled to relief under Holloway because they do not have Court Ordered Placement Dates, and therefore by definition, they do not have Actual Placement Dates that fall after their Court Ordered Placement Dates. Similarly, Bynum class members are not entitled to relief under the Male Equal Protection Claim (1) because they do not have Court Ordered Placement Dates, and (2) because they were not discriminated against on the basis of their gender.

### 3.    *Relevant Facts That Support Claims Different*

Defendant states in support of its motion that "both cases are essentially the same" because:

Both allege plaintiffs are over-detained. Both attribute the over-detention to the same set of circumstances -- that is the alleged historical deficiencies in the Records Offices of the D.C. Department of Corrections. Both cases rely on findings made in the "Shaw Report' and in fact cite the exact same passages and quotes. Both cite the 'Wright Report' and the exact same passages. In fact, other than

19

changing the names of the representative plaintiffs, and adding the

words " to the halfway house" to the definition of over-detention, both

cases are essentially the same.

Defendant's motion to dismiss, page 5.

But, the Holloway Second Amended Complaint alleges other relevant facts in

support of the Holloway overdetention claim that were not alleged in the Bynum

complaint, and were not relevant to the Bynum overdetention claim.  For example,

the Holloway plaintiffs allege that one cause of the Department of Corrections'

failure to place inmates in halfway houses when ordered by judicial officers is that

the Department of Corrections "does not utilize the space" it has [to house inmates

in halfway houses].  Second Amended Complaint ¶ 16, 23, 27, 46, heading before ¶

46.  The Holloway complaint clearly alleges in the heading before ¶ 87 that the

Department of Corrections has adequate halfway house space for women but not for

men.  Additionally, the Holloway complaint alleges, "Until the past week, the

Department of Corrections has always treated a commitment order to a halfway

house as opposed to the DC Jail, as advisory, rather than as an order committing a

person to the halfway house as opposed to the jail."  Second Amended Complaint, ¶

87.

These facts were not alleged in the Bynum complaint because these facts were not relevant to the Bynum type overdetention claim.

### 4.    *The Computer Data*

The computer data defendant provided to plaintiffs for identifying Bynum class members and providing them notice does not have a field from which plaintiffs could even ascertain a Court Ordered Placement Date for potential Holloway claimants.

The computer data from JACCS (District of Columbia's computerized inmate accounting population system) and CIS (Superior Court computerized case docketing system) which the District provided to plaintiffs in the Bynum case to identify Overdetention Class members and to calculate their periods of overdetention (if any), and to send notice to class members, did not have fields from which plaintiffs could identify Holloway class members.  Plaintiffs' Exhibit # 1, Affidavit of Brian Kriegler.

The key event fields in Bynum are an Exit Date that falls after Release Date. The key event fields in Holloway are an Actual Placement Date that falls after the Court Ordered Placement Date.  An additional field in the Holloway Male Equal Protection Class is the sex of the inmate.  The fields in the JACCS data correspond

to the elements in the Bynum overdetention claim and the Holloway overdetention

claims.  Plaintiffs' Exhibit # 1, Affidavit of Brian Kriegler, ¶

Defendant simply did not provide to the Bynum plaintiffs JACCS records

from the JACCS field from which plaintiffs could ascertain an inmate's Court

Ordered Placement Date (if that inmate happened to be in a halfway house).

Plaintiffs' Exhibit # 1, Affidavit of Brian Kriegler, ¶

Moreover, defendant provided to plaintiffs only records for inmates who had

an Exit Date on or before August 31, 2005.  The Exit Date is crucial for Bynum

overdetention claimants because the Exit Date is what triggers inclusion in the class.

But, whether a person had an Exit Date at all does not affect his inclusion in the

Holloway class.  Plaintiffs' Exhibit # 1, Affidavit of Brian Kriegler, ¶   Therefore,

by limiting the data to inmates with an Exit Date on or before August 31, 2005,

defendant excluded Holloway claimants whose Holloway claim arose during the

class period, but who were not released or entitled to release during the class period

(but were entitled to transfer to a halfway house). (In addition, defendants did not

provide other fields needed to identify them, e.g. Court Ordered Placement Date).

Further, none of the "queries" designed by the Department of Corrections to

catch all persons held in the DC Jail past Release Dates by comparing the Release

Dates with the Exit Dates contained fields necessary to identifying Holloway

claimants, that is, Court Ordered Placement Date.  Plaintiffs' Exhibit # 1, Affidavit of Brian Kriegler, ¶

Department of Corrections IT people never suggested to Mr. Kriegler that Holloway claimants be added to the data.

As a result of the scope of the Bynum class and the attendant data production, the Holloway claimants were not identifiable from the data, their identities were not ascertained and provided to class administrator, and they were not on the class lists provided to the class administrator for sending notice.

### 5.    The Point Scheme Set Out In The Proposed Final Approval Order Does Not Compensate Holloway Claimants

Additionally, the point scheme set out in the proposed final approval order does not provide any compensation to Holloway claimants, because the overdetention compensation is based solely on Exit Date and Release Date, and does not take into account the difference between the Actual Placement Date and the Court Ordered Placement Date.[1]

---

[1] According to defendant's theory, therefore, the Holloway class members would be bound by the Bynum settlement despite receiving no benefit from it.

23

**B.      DISCUSSION: BYNUM RELEASE DOES NOT RELEASE**

**HOLLOWAY CLASS MEMBERS' CLAIMS**

The Bynum release does not release the Holloway claims.

### 1.      The Language In The Papers

Defendant bases its argument that the release in the Bynum Settlement

Agreement releases the Holloway overdetention claims on the following language in

section B.2 on page 6 of the Bynum Settlement Agreement:

> The parties agree that the monetary relief shall compensate for all
>
> alleged violations of rights and all claims and any other incidents of
>
> incarceration by the plaintiff class members that were or could have
>
> been brought in this civil action under any theory of liability for any
>
> claims related to allegedly unlawful over-detentions and strip searches,
>
> except as to monetary damages for those class members who choose to
>
> opt out.

Defendant's motion to dismiss, page 6.

The entire paragraph from the Bynum Settlement Agreement reads:

> This is a hybrid class action, certified under Fed. R. Civ. P. 23(b)(2)
>
> with regard to seeking injunctive relief on over-detention and strip

24

<u>searches of inmates under the definition of the strip search class set forth, supra. Therefore, regarding prospective injunctive relief, no member of the class may opt-out. With regards to monetary relief, the class is certified under Fed. R. Civ. P. 23(b)(3) and class members have a right to opt out of the monetary relief stage</u>. The parties agree that the monetary relief shall compensate for all alleged violations of rights and all claims and any other incidents of incarceration by the plaintiff class members that were or could have been brought in this civil action under any theory of liability for any **claims related to allegedly unlawful over-detentions and strip searches**, except as to monetary damages for those class members who choose to opt out.

Settlement Agreement, section B.2, page 6. (underlining added; bold added).

### 2. *The Applicable Legal Standard For Construing Which Claims Were Released By The Settlement Agreement*

"An action to enforce a settlement agreement is, at bottom, an action seeking the equitable remedy of specific performance of a contract. <u>See</u> <u>Quijano v. Eagle Maintenance Servs., Inc.</u>, 952 F.Supp. 952 F.Supp. 1, 3 (D.D.C.1997)(quoting <u>Adams v. Johns-Manville Corp.</u>, 876 F.2d 702, 709 (9th Cir.1989); <u>Hensley v. E.R. Carpenter Co., Inc.</u>, 633 F.2d 1106 at 1110 n. 5 (5th Cir. 1980). This is the case even

where, as here, the opposing party disputes certain facts related to the formation of the settlement contract." Samra v. Shaheen Business and Investment Group, Inc. 355 F.Supp.2d 483, 493 (D.D.C. 2005).

The District's motion to dismiss is essentially a species of a motion to enforce the Bynum settlement agreement as a means of precluding the Holloway claim, and normal rules of contract construction apply.

The enforcement of settlement agreements in federal courts is governed by state contract law. Makins v. District of Columbia, 349 U.S. App. D.C. 303 (D.C. Cir. 2002). The District of Columbia Court of Appeals treats settlement agreements as contracts. Makins, 277 F.3d at 548, citing Goozh v. Capitol Souvenir Co., 462 A.2d 1140, 1142 (D.C. 1983). The District of Columbia Court of Appeals follows the "objective law" of contract interpretation standard formulated by the District of Columbia Court of Appeals in Patterson v. District of Columbia, 795 A.2d 681, 683 (D.C. 2002) , amended on other grounds by, rehearing denied by, Patterson v. District of Columbia, 819 A.2d 320 (D.C. 2003) and followed in this Court, e.g. Sapiro v. VeriSign, 310 F. Supp. 2d 208, 213 (D.D.C. 2004); Byrnes v. MSPB, 2003 U.S. Dist. LEXIS 26307 (D.D.C. 2003); Greene v. Rumsfeld, 266 F. Supp. 2d 125, 136 (D.D.C. 2003); Potomac Elec. Power Co. v. Mirant Corp., 251 F. Supp. 2d 144, 148 (D.D.C. 2003).

26

Under the "objective law" of contract interpretation, under which the written language of a contract governs the parties' rights unless it is not susceptible of clear meaning.  Patterson v. District of Columbia, 795 A.2d 681, 683 (D.C. 2002). Fundamentally, when interpreting a contract, the court should look to the intent of the parties entering into the agreement.  Patterson v. District of Columbia, 795 A.2d 681, 683 (D.C. 2002).  In deciding whether contract language releases a claim, the court looks beyond the language itself and determines what a reasonable person in the position of the parties would have thought the disputed language meant whether or not the contract's language appears ambiguous. Patterson, 795 A.2d at 683. Under the reasonableness approach, the court assumes that the objective reasonable person assessing the contract's language knows "all the circumstances before and contemporaneous with the making of the agreement." Patterson, 795 A.2d at 683. The reasonable person is bound by all usages that either party knows or has reason to know.  The objective standard applies both to the circumstances surrounding the contract and the parties' course of conduct under the contract. Id. Finally, the court should look to the intent of the parties entering into the agreement.

Using this approach, the objective reasonable person assessing the contract's language "is presumed to know all the circumstances before and contemporaneous with the making of the agreement," Id. at 87 (citations omitted), and extrinsic

evidence is admissible to determine the nature of those circumstances. See Christacos v. Blackie's House of Beef, Inc., 583 A.2d 191, 194 (D.C. 1990). This reasonableness determination involving an evaluation of the surrounding circumstances is to be applied whether the contract's language appears ambiguous or not. Fairfax Vill. Condo. VIII Unit Owners' Ass'n v. Fairfax Vill. Cmty. Ass'n, Inc., 726 A.2d 675, 677 n.4 (D.C. 1999); see also, e.g., Christacos, 583 A.2d at 194 ("although extrinsic evidence of the parties' subjective intent may be resorted to only if the document is ambiguous, extrinsic evidence may be considered to determine the circumstances surrounding the making of the contract so that it may be ascertained what a reasonable person in the position of the parties would have thought the words meant").

**3.    *Application Of Legal Standard To Bynum Settlement Agreement Language***

Applying this standard to the language of the release in the Bynum Settlement Agreement establishes that the release did not release[1] the Holloway overdetention claims.

---

[1] We explain further on why it could not do so under the circumstances and comply with the requirements of due process.

The bolded text makes clear that the release releases only "**claims related to allegedly unlawful over-detentions**." (bold added) The underlined text makes clear that the term, "over-detentions," as used in the bold part of the text, refers to the term "overdetention" as it is defined in the Bynum complaints, and this Court's Orders. The burden is on defendant to show that the Bynum Settlement Agreement, which expressly released the Bynum overdetention claim, excluded any other type of claims, including any other type of overdetention claim. See <u>Carter v. Rubin</u>, 14 F. Supp. 2d at 36 (where agreement deals explicitly with only one type of claim a plaintiff had, the burden is on defendant to show that it excluded another type of claim).

As the last 6 words of this paragraph drafted by defendant show, even defendant concedes that the release relates to "claims **related to allegedly unlawful over-detentions**." Defendant's contention fails because defendant's main argument is that both cases challenge overdetentions, and therefore the classes are the same. As stated above, the elements of the two overdetention claims are different, even though the word overdetention[1] is used in both claims.

---

[1] An inmate in a local jail can be overdetained in many different fact patterns, each of which states a different cause of action. For example, an arrestee can be overdetained if he is held more than a "reasonable" amount of time before being

The text of the release itself, and the analysis of the Bynum overdetention claim and the intent of the parties show that the Bynum plaintiffs did not, and in fact could not have, released the overdetention claim of the Holloway class.

The first paragraph clearly limits the Bynum release to "any claims related to allegedly unlawful over-detentions and strip searches…" The second quoted paragraph also limits the release to claims encompassed within the Settlement agreement, which deals with overdetention claims as they are defined in the Settlement Agreement and this Court's Order certifying the Overdetention Class. ["claims that were brought or that could have been brought in the Lawsuit, either directly or indirectly, representatively, derivatively, or in any other capacity, or that are otherwise encompassed within the Settlement agreement"].

The above discussion establishes that the Bynum overdetention and the Holloway overdetention claims are separate and distinct claims. But, defendant states on page 6 of its motion to dismiss:

> Clearly, unequivocally, and unambiguously, plaintiffs agreed that the
>
> settlement not only encompassed the over-detention claims raised in
>
> *Bynum,* but also all alleged violations of rights and all claims and any

presented to a judicial officer. County of Riverside v. McLaughlin, 500 U.S. 44 (1991).

other incidents of incarceration by the plaintiff class members that were

**or could have been brought** in that civil action *(Bynum)* **under any**

**theory of liability** for any claims **related to allegedly unlawful over-**

**detentions. (emphasis in original)**

However, the Holloway claims are not ones that "could have been brought[1]"

in the Bynum case, and thus subject to the release in the Bynum Settlement

Agreement.  First of all, the claims and parties are different, and so claim preclusion

principles do not apply.  Second, none of the Bynum named plaintiffs expressly

asserted a Holloway overdetention claim, or plead facts supporting a Holloway

overdetention claim.  Therefore, none of the Bynum named plaintiffs was an

adequate representative of the Holloway class because no Bynum named plaintiff

satisfied the "typicality" requirement as established by the Supreme Court in <u>Gen.

Tel. Co. of the Southwest v. Falcon</u>, 457 U.S. 147 (U.S. 1982).

Also, as discussed below, the Bynum named plaintiffs and the class could not

release a claim that could have been brought without discussing it, disclosing it in

the class notice, and sending adequate notice to persons holding the claim so that

---

[1] Under claim preclusion principles, both claims that were brought in a case, and
claims that could have been brought are subject to preclusion.

they have an opportunity to opt out or object on the basis of the claim. The parties did not do this.

### 4.    *Application Of Legal Standard To Conduct Of Parties*

Additionally, the conduct of the parties in Bynum shows that the only reasonable interpretation of the scope of the release in the Bynum Settlement Agreement is that both sides did not believe that the Bynum Overdetention Claim subsumed the Holloway claims.

As stated above, none of the Bynum named plaintiffs expressly asserted a Holloway overdetention claim, or plead facts supporting a Holloway overdetention claim.

Therefore, the only possibility is that some absent class members may have had Holloway overdetention claims, or that defendant is contending that Bynum class members are attempting to extinguish a non-class claim that no named plaintiff held.

### C. ASSUMING ARGUENDO THAT DEFENDANT'S ARGUMENT IS CORRECT, THE HOLLOWAY CLAIMANTS ARE NOT BOUND BY BYNUM SETTLEMENT AGREEMENT RELEASE BECAUSE THEY DID NOT GET NOTICE AND AN OPPORTUNITY TO OPT OUT

If, as defendant argues, the parties intended that the release in the Bynum Settlement Agreement covers the Holloway overdetention claims, then the Bynum class would have had to give Holloway claimants notice and an opportunity to opt out of the Bynum class. In order for the Bynum Settlement Agreement to release the Holloway money damages claims of the absent class members, the Bynum class notice would have to give notice and an opportunity to opt out to the absent class members with Holloway claims. In re Veneman, 309 F.3d 789, 792 (D.C. Cir. 2002); Pigford v. Veneman, 355 F. Supp. 2d 148, 161 (D.D.C. 2005).

In this case, since the names and addresses of the claimants are in the Department of Corrections JACCS database, that would have required individual notice. See Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 174-75 (1974); Fed. R. Civ. P. 23(c)(2)(B) (class member's procedural and due process rights are satisfied by the "best notice practicable under the circumstances including individual notice to all

33

members who can be identified through reasonable effort.").  However, defendant

did not produce to plaintiffs records from the JACCS database needed to identify

Holloway claimants, and so no attempt was made to send them notice.  This is no

mere formality, for it is a fundamental due process right that "adjudication be

preceded by notice and opportunity for hearing appropriate to the case." Mullane v.

Cent. Hanover Bank & Trust Co., 339 U.S. 306, 313 (1950)(in proceeding affecting

rights of members of a common trust fund, due process required notice beyond

publication for those for whom the trustee had names and addresses were available;

"we find no tenable ground for dispensing with a serious effort to inform them

personally of the accounting, at least by ordinary mail to the record

addresses")(latter quote from 339 U.S. at 318). To be effective, a release of non-

class claims of absent class members must be a knowing release made after notice

and an opportunity to be heard.  See Matsushita Elec. Indus. Co., Ltd., v. Epstein,

516 U.S. 367, 379 (1996).

    The discussion above shows that the Bynum class did not direct the best

notice practical in the circumstances to the Holloway claimants, and the class

definition and the points scheme laid out in the proposed final order shows that the

Bynum Settlement Agreement does not provide for payment to Holloway claimants

for their Holloway claims.   That being the case, if the Court were to accept

defendant's argument that the term overdetention in the release in the Bynum Settlement Agreement includes the Holloway claimants' overdetention claims, or that the Holloway is precluded as a claim that the Bynum class members could have brought, then, under the well-established principles discussed above, the Holloway claimants are not bound by the release in the Bynum Settlement Agreement because they have not had adequate notice nor an opportunity to opt out.

## III. THE BYNUM PRECLUSION AGAINST FILING SUIT DOES NOT APPLY TO HOLLOWAY CLASS MEMBERS

The Bynum preclusion against filing new lawsuits does not apply to anyone in the Holloway case. By its terms, that provision of the Bynum preliminary approval order applies only to (1) Bynum class members (2) with respect to the claims encompassed by the Bynum Settlement Agreement. For the reasons we have discussed, the Bynum Settlement Agreement did not encompass the Holloway claims.

Moreover, regardless what evidence defendant might adduce in a subsequent motion, and regardless of whether any Holloway named plaintiff had a Bynum overdetention claim, on this record, defendant did not adduce evidence in support of its motion to dismiss that any of the Holloway named plaintiffs even had a Bynum

overdetention claim.  Defendant had the burden to put on evidence in support of its

affirmative defense of claim preclusion but chose not to.  Fed. R. Civ. P. 8(c).

**IV.    CONCLUSION**

For the reasons stated above, defendant's motion should be denied with

prejudice.

|  |  |
|---|---|
| Respectfully submitted,<br><br>_____<br>William Claiborne<br>DC Bar # 446579<br>Counsel Plaintiffs<br>717 D Street, NW<br>Suite 210<br>Washington, DC 20004<br>Phone 202/824-0700<br>Fax 202/824-0745 |  |