# DECLARATION OF BRIAN KRIEGLER

I, Brian Kriegler, declare and say:

1.  I am a PhD student at the UCLA Department of Statistics. I received my M.S. in Statistics from UCLA in December 2004. I have worked on the data compilation and analysis in *Bynum v. District of Columbia*, No. 02-956(RCL), since May 2004. While I have worked in this capacity in conjunction with Richard Berk, Distinguished Professor of Statistics at UCLA, I have been the plaintiffs' representative primarily responsible for assembling, sorting, coding and analyzing the computer data from JACCS (Department of Corrections computerized inmate population accounting system) related to overdetentions and strip searches provided by the District of Columbia Department of Corrections in the *Bynum* case (hereafter "Bynum data"). I also analyzed the data from the District of Columbia Superior Court case docketing system ("CIS") but that data was ultimately not used except to provide mailing addresses, and to determine acquittals in the Strip Search Class point system.

2.  In the capacity described in the previous paragraph, I have become intimately familiar with the Bynum data. I have been the one to determine, on plaintiffs' behalf, who qualifies as "overdetained," as that term was used in the Bynum case. In the Bynum case, a person was

1

considered overdetained if his "Exit Date" (the date he was released from Department of Corrections' custody) was later than his "Release Date" (the date a court had actually ordered that he be released on). In the JACCS computer system, a particular field corresponds to Exit Date, and one of several fields corresponds to Release Date. The JACCS data shows the jail location where a person was on his Exit Date.

3. The JACCS data as produced to me by the Department of Corrections was every inmate with a populated Exit Date field, that is, data for all inmates who had been released from Department of Corrections custody during the relevant time period. The District also gave plaintiffs "queries" designed by the Department of Corrections to catch all persons held in the DC Jail past their court ordered release dates ("Release Date") by comparing the Release Date with the Exit Date. In the course of my work on the case, I have reviewed all of the data runs provided by the defense and reproduced those data runs independently. This was necessary in order to ensure that plaintiffs understood the positions being asserted by defendants, and that any differences in approach, to the extent they existed, could be identified. In addition, I had numerous interactions regarding the data with my counterparts in the Department of Corrections responsible for its data

analysis of overdetentions. I also suggested refinements to the "queries" based on criteria provided to me by plaintiffs' counsel.

4. I have been asked by class counsel Barrett S. Litt and William Claiborne to address the issue of whether inmates held in CTF or the DC Jail after being ordered placed in a halfway house were treated as overdetained in the Bynum data. Mr. Litt and Mr. Claiborne have provided me with the following Holloway class definition:

> (a) Each person who has been, is, or will be incarcerated in any District of Columbia Department of Corrections facility in the three years preceding the filing of this action up to and until the date this case is terminated; and (b) who was held in the DC Jail or the CTF after a judicial officer ordered his placement in a halfway house.

5. Class counsel have explained to me that halfway houses are Department of Corrections facilities, and that placements from the DC Jail or CTF to a halfway house are internal, intra-agency transfers that do not involve release from Department of Corrections custody.

6. Inmates held in CTF or the DC Jail after being ordered placed in a halfway house (hereafter "untransferred halfway house inmates") did not fall in the definition of an overdetained inmate in the Bynum data. The

key reason is because, in Bynum, the event that triggered inclusion in the class definition was release from Department of Corrections' custody. That is, the fields showing release from Department of Corrections custody and date of release had to be populated.

7. In contrast, inmates held in CTF or the DC Jail after being ordered placed in a halfway house do not have to be released from Department of Corrections custody in order to be included in the Holloway class definition. Therefore, there is no requirement that the Exit Date field showing release from Department of Corrections custody be populated for class members.

8. A second key difference is that, in the Holloway case, the event triggering inclusion in the class is being ordered placed in a halfway house. Therefore, in order to identify Holloway class members, I would need a field showing that a person had been ordered into a halfway house, the date on which he or she was supposed to have been placed in a halfway house ("Court Ordered Placement Date"), and a field showing the date that a person had actually been placed in a halfway house ("Actual Placement Date"). The JACCS Bynum data I was given does not have a field showing the Court Ordered Placement Date. The data does have a field showing the Actual Placement Date because JACCS has fields showing inmate locations

4

in the Department of Corrections and their transfer dates. I could not use the Bynum data to compute the "Overdetention Period" (Actual Placement Date minus Court Ordered Placement Date) for Holloway class members because the Bynum data does not have the Court Ordered Placement Date.

9. Halfway houses did show up in the Bynum data that was provided to me, but only as one of many Department of Corrections locations from which individuals were released. In the work that I did for the Bynum case, and the work the District did that I reviewed, a person was considered overdetained if their Exit Date was greater than their Release Date. Halfway houses showed up as a location that an individual was in from which he or she was released. If the person had an Exit Date past the Release Date, whether the person was released from a jail or a halfway house, the person was considered overdetained, and his or her days of overdetention were calculated accordingly. If the person did not have an Exit Date past the Release Date, whether from a jail or a halfway house, the person was not considered overdetained, and no days of overdetention were calculated.

10. Thus, no one has ever been treated as a member of the Bynum class solely by virtue of the fact that he or she was not transferred to a halfway house on his or her Court Ordered Placement Date.

11. In fact, information regarding whether someone was ever in a halfway house only appeared in the data provided because that was a location from which individuals were released. The data did not identify the date on which an individual was supposed to have been transferred to a halfway house, which would have been a necessary piece of information if the time after such a date were being treated as a period of overdetention.

12. Moreover, the queries that the District of Columbia Department of Corrections persons designed to identify Bynum class members and their periods of overdetention did not identify persons held in the DC Jail or the CTF after a judge ordered their placement in a halfway house. Additionally, no Department of Corrections person I spoke to ever suggested that such persons be included in the Department of Corrections queries. Finally, none of the queries currently being used by plaintiffs and the class administrator to identify Bynum class members and their periods of overdetention can identify untransferred halfway house inmates.

13. To summarize, untransferred halfway house inmates were not considered or treated as overdetained in any of the work that either I did, or that computer technicians for the District of Columbia did and provided to me, in the Bynum case. Untransferred halfway house inmates were not part of any of the data runs that I ever did during the pendency of the Bynum

case, or in what has been provided to the Bynum Class Administrator, Rosenthal & Co. Similarly, they were not part of the data runs that anyone from the District did that I reviewed. And they are not part of the Bynum class mailing that Rosenthal & Co. is currently in the process of sending out.

I declare, under penalty of perjury, that the foregoing is true and correct. Executed at Los Angeles, California, on October 18, 2005.

*[signature] 10/18/2005*
_____
Brian Kriegler