UNITED STATES DISTRICT COURT

OF THE DISTRICT OF COLUMBIA

| | |
|---|---|
| GREGORY HOLLOWAY, et al<br><br>Plaintiffs<br><br>v.<br><br>GOVERNMENT OF THE DISTRICT OF COLUMBIA,<br><br>Defendant | Civil Action No:  **05-1502 (RCL)**<br><br>Next Event: None scheduled |

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN**

**SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

## I.   INTRODUCTION

The District of Columbia Department of Corrections has followed a practice of holding inmates in the DC Jail or CTF for days, weeks and months after judicial officers (judges and magistrates of the District of Columbia Superior Court and the District of Columbia District Court) ordered them placed in Department of Corrections' halfway houses.  Plaintiffs' Exhibit # 2[1], Lists of persons awaiting placement in a halfway house; Plaintiffs' Exhibit ## 10-14(affidavits of attorneys

---

[1] This exhibit is numbered Plaintiffs' Exhibit # 2 because plaintiffs are numbering all exhibits sequentially from exhibit # 1 (Affidavit of Brian Kriegler) in their opposition to defendant's motion to dismiss the complaint.

practicing criminal defense in the District of Columbia Superior Court). The District of Columbia Circuit Court of Appeals has recently ruled that this conduct is actionable under the Fourth or Fifth Amendments to the U.S. Constitution. Taylor v. United States Prob. Office, 409 F.3d 426, 430 (D.C. Cir. 2005)(success in his action will demonstrate nothing more than the unlawfulness of his placement at the DC Jail location instead of in a halfway house).

### A. FACTUAL BACKGROUND OF HALFWAY HOUSE OVERDETENTIONS

The DC Department of Corrections contracts with several Community Release Programs who operate facilities known as community correctional centers or halfway houses. The department has contracts with four private and independently operated halfway houses: Efforts From Ex-Convicts, Extended House, Inc., Fairview, and Hope Village. The U.S. District Court for DC and the Superior Court of DC place pretrial offenders and sentenced misdemeanants in halfway houses as an alternative to incarceration. http://doc.dc.gov/doc/cwp/view,a,3,q,491452.asp.

Judges and magistrates of the District of Columbia District Court and the District of Columbia Superior Court routinely commit defendants in criminal cases to one of the District of Columbia halfway houses. However, many inmates wait days, weeks and even months before actually being placed in a halfway house. In fact, some inmates never get to a halfway house, and instead spend their whole period of

incarceration in the DC Jail or CTF.  Plaintiffs' Exhibit # 2, Lists of persons awaiting

placement in a halfway house; Plaintiffs' Exhibit ## 10-14 (affidavits of attorneys

practicing criminal defense in the District of Columbia Superior Court).  The average

for placement in a halfway house of persons on the list is six weeks.  Second[2]

Amended Complaint ¶ 86A; Plaintiffs' Exhibit # 2, Lists of persons awaiting

placement in a halfway house; Plaintiffs' Exhibit ## 10-14 (attorney affidavits).  .

There are several reasons for this practice of continuing to hold inmates in the

DC Jail or CTF after a judicial officer has ordered their placement in a halfway house.

 The inmate management system at the Department of Corrections has had trouble

processing and tracking inmates over the years.  Additionally, the Department of

Corrections treated commitment orders requiring placement in a halfway house as

advisory rather than mandatory, Second Amended Holloway Complaint, ¶ 87, and

defendant did not utilize the bed space it had available in existing halfway houses,

Second Amended Complaint ¶ ¶ 16, 23, 27, 46, paragraph heading that precedes ¶ 46.

 Additionally, the recent Court of Appeals decision cited above, <u>Taylor v. United</u>

<u>States Prob. Office</u>, 409 F.3d 426, 430 (D.C. Cir. 2005) indicates that an additional

_____

[2] Plaintiffs base this motion on the allegations and class definitions in their Second Amended

Complaint because defendant consented to amending the First Amended Complaint and agreed to

direct its motion to dismiss to the Second Amended Complaint.

cause of late or non-placement in a halfway house, or unlawful removal of an inmate from placement in a halfway house, is due to failure to track and manage detainers (the Department of Corrections will not allow inmates with extraditable detainers to move to or remain in halfway houses).

A further reason for delay in placement is that, although the Department of Corrections seems to have adequate space for female inmates ordered placed in a halfway house, it has inadequate space for male inmates ordered placed in a halfway house.  At the time the Second Amended Complaint was filed, 25 of the persons on the then current list of persons held in the DC Jail awaiting placement in halfway houses were men, but only one was a woman.  Second Amended Complaint, ¶ 86A.

## B. PLAINTIFFS' CLAIMS

Plaintiffs' Second Amended Complaint states two claims, the simple Overdetention Claim, alleging that the Department of Corrections holds inmates in the DC Jail or CTF after a judicial officer has ordered their placement in a halfway house, and the Male Equal Protection Claim which states a halfway house overdetention claim for men only, alleging that the Department of Corrections discriminated against males on the basis of their gender in failing to place them in halfway house when ordered to do so by a judicial officer by providing adequate halfway house space for women but not men.

Plaintiffs seek class action treatment for the Overdetention Class and class action treatment for the Male Equal Protection Class as a subclass of the Overdetention Class. Each class separately meets the requirements as a "hybrid" class under Fed. R. Civ. P. 23(b)(2)/ (b)(3). <u>Eubanks v. Billington</u>, 110 F.3d 87, 96 (D.C. Cir. 1997)( court may adopt a "hybrid" approach, certifying a (b)(2) class as to the claims for declaratory or injunctive relief, and a (b)(3) class as to the claims for monetary relief, effectively granting (b)(3) protections including the right to opt out to class members at the monetary relief stage).

Plaintiffs will first discuss the Rule 23 elements and their application to the Overdetention Class. Plaintiffs will then briefly address the application of the Rule 23 elements to the Male Equal Protection Class.

## II.    <u>LAW GOVERNING CLASS ACTIONS</u>

### A.  <u>REQUIREMENTS FOR CLASS CERTIFICATION</u>

The party requesting class certification under Rule 23 bears the burden of showing the existence of a class, that all the prerequisites of Rule 23(a) are satisfied, and that the class falls within one or more of the categories of Rule 23(b). <u>Franklin v. Barry</u>, 909 F. Supp. 21, 30 (D.D.C. 1995). The presumption is in favor of certifying the class. H.B. Newberg and A. Conte, <u>Newberg on Class Actions</u> (hereafter "Newberg") Vol.6, §7.17; <u>In re School Asbestos Litigation</u>, 789 F.2d 1996 (3rd Cir.)

5

cert denied, 479 U.S. 852 (1986).

Rule 23(a) list four requirements for class action certification:

(1)     the class is so numerous that joinder of all members is

impracticable ["numerosity"];

(2)     there are questions of law or fact common to the class

["commonality"];

 (3)     the claims or defenses of the representative parties are typical of

the claims or defenses of the class ["typicality"]; and

(4)     the representative parties will fairly and adequately protect the

interests of the class ["adequacy"].

Plaintiffs must also satisfy at least one of the subdivisions of Rule 23(b).  A

plaintiff satisfies Rule **23(b)(2)** by showing:

the party opposing the class has acted or refused to act on grounds

generally applicable to the class, thereby making appropriate final

injunctive relief or corresponding declaratory relief with respect to the

class as a whole.

A plaintiff satisfies Rule **23(b)(3)** by showing:

 (1) the questions of law or fact common to the members of the class

predominate over any questions affecting only individual members; and (2)

a class action is superior to other available methods for the fair and efficient

6

adjudication of the controversy.

It is a common practice for courts in this Circuit to certify a "hybrid" class under both 23(b)(2) and (3).  See, e.g., Eubanks v. Billington, 1997 U.S. App. LEXIS 6654 (D.C. Cir. 1997); Bynum v. District of Columbia, 214 F.R.D. 27 (D.D.C. 2003) (overdetention class)("Bynum I"); Bynum v. District of Columbia, 217 F.R.D. 43 (D.D.C. 2003)(strip search class) ("Bynum II").  In this case, plaintiff is asking the Court to certify a Rule 23(b)(2) class for injunctive relief and a Rule 23(b)(3) class on damages.

**B.  PRESUMPTIONS AND BURDENS APPLICABLE TO MOTION FOR CERTIFICATION**

In deciding a motion for class certification, the plaintiffs' allegations are taken as true and inquiry into the merits of the case is improper at the class certification stage.  The legal standard is whether the evidence presented by plaintiffs establishes a "reasonable basis for crediting plaintiffs' assertions."  Bynum I, 214 F.R.D. at 31 (citing cases).

The court has considerable discretion as the issue of class certification on appeal is reviewed for an abuse of discretion. Barber v. Hawaii, 42 F.3d 1185, 1197 (9th Cir.1994); Hilao v. Estate of Marcos, 103 F.3d 767, 774 (9th Cir. 1996). However, courts should exercise that discretion liberally for, "if there is to be an error

made, let it be in favor and not against the maintenance of the class action, for it is always subject to modification should later developments during the course of the trial so require." Esplin v. Hirschi, 402 F.2d 94, 99 (10th Cir. 1968), cert. denied, 394 U.S. 928 (1969).

## III.  APPLICATION OF LAW TO THE OVERDETENTION CLASS

### A.  PLAINTIFFS ESTABLISH THE EXISTENCE OF A CLASS

It is axiomatic that for a class action to be certified a 'class' must exist."  Simer v. Rios, 661 F.2d 655, 669 (7th Cir. 1981); Pigford v. Glickman, 182 F.R.D. 341, 346 (D.D.C. 1998).  The definition of the proposed overdetention class set forth in plaintiffs' Second Amended Complaint easily satisfies this requirement because plaintiffs' proposed overdetention class definition sets forth general parameters that limit the scope of the class to such a degree that it is administratively feasible for the Court to determine whether a particular individual is a member of the overdetention class.  Bynum I, 214 F.R.D. at 31-32.

Plaintiffs' Second Amended Complaint defines the proposed Overdetention Class as:

(a) Each person who has been, is, or will be incarcerated in any District of Columbia Department of Corrections facility in the three years preceding the filing of this action up to and until the date this case is

terminated; and (b) who was held in the DC Jail or the CTF after a judicial officer ordered his placement in a halfway house.

Plaintiffs have sufficiently outlined the boundaries of the class because "by looking at the class definition, counsel and putative class members can easily ascertain whether they are members of the class." Pigford, 182 F.R.D. at 346. Anyone who has been held in the DC Jail or CTF after a judge ordered his placement in a halfway house during the class period can easily determine, simply by reading the definition, whether he or she was a member of the proposed class. See Bynum I, 214 F.R.D. at 32. If, during the prescribed time period, he or she was incarcerated in the DC Jail or CTF, and he or she were ordered placed in a halfway house, all that he or she would need to determine is whether he or she was placed in the halfway house. Id.

There are no terms in the definition that require further clarification, and nothing in the definition would require the Court to hold individualized hearings to decide whether a particular individual fell within the scope of the definition. Id.

**B.**     **P**LAINTIFFS **S**ATISFY THE **R**ULE **23(A) R**EQUIREMENTS FOR **C**LASS **C**ERTIFICATION

**1.**     **The Overdetention Class is so Numerous that Joinder of All Members is Impracticable.**

Rule 23(a)(1) provides that a class action may be maintained only if "[t]he class is so numerous that joinder of all members is impracticable". <u>Bynum I</u>, 214 F.R.D. at 32.

The party moving to certify the class need not supply the exact numbers of the class. <u>Bynum I</u>, 214 F.R.D. at 41. Moreover, the numerosity requirement does not require a large number of plaintiffs, nor does it require that the exact number of class members or their identities be alleged. <u>Johns v. DeLeonardis</u>, 145 F.R.D. 480 (N.D. Ill. 1992) (numerosity requirement satisfied and class certified where approximately twenty-five women were subjected to illegal strip search by Chicago police officers in a police raid). To satisfy the numerosity requirement, "Plaintiffs need only show that the number is sufficiently large such that it would be extremely difficult or inconvenient to join all the members of the class." <u>Franklin</u>, 909 F. Supp. at 30, (<u>citing</u> <u>Robidoux v. Celani</u>, 987 F.2d 931, 935 (2d Cir. 1993). This Court has held that generally 40 members will satisfy the numerosity requirement. <u>Neal v. Moore</u>, 1994 U.S. Dist. LEXIS 21339, *24 (D.D.C. 1994).

Plaintiffs submit herewith lists of inmates ordered into halfway houses who were on a waiting list awaiting placement in a halfway house. Plaintiffs' Exhibit # 2; The attorneys submitting the attorney affidavits authenticate the lists. Plaintiffs' Exhibit # 2; Plaintiffs' Exhibit ## 10-14 (attorney affidavits). Each one of these persons is a member of the proposed Overdetention Class. This number far exceeds the number necessary to make joinder of all class members impracticable and thus to meet the numerosity requirement. This list, which is not a complete list of class members, contains the names of 56 Overdetention Class class members. The full number will only be known after defendants produce the relevant computer records with the relevant fields.

Plaintiffs also submit in support of numerosity the affidavits of 5 attorneys who have practiced criminal law in the District of Columbia Superior Court over the last 5-10 years who have personal knowledge of the Department of Corrections' persistent and pervasive custom of holding inmates in the DC Jail and CTF after a judicial officer has ordered their placement in a halfway house. Plaintiffs' Exhibit ## 10-14 (attorney affidavits).

### 2. *The Overdetention Class Presents Several Common Questions of Law and Fact.*

Rule 23(a)(2) requires that there be "questions of law or fact common to the

11

class."  It is not necessary that every issue of law or fact be the same for each class

member.  Bynum I, 214 F.R.D. at 33-34.  The commonality test is met where there is

at least one issue, the resolution of which will affect all or a significant number of the

putative class members even if there are factual variations among the class members.

Id.  See Smith v. Montgomery County, M.D., 573 F. Supp. 604, 611 (D. Md.

1983)(class of temporary detainees strip searched without probable cause to believe

that they possessed either weapons or contraband certified); Doe v. Calumet City,

Illinois, 707 F. Supp. 343, 345 (N.D. Ill. 1990) (plaintiffs not required to show that

defendant lacked reasonable belief that individual plaintiffs were concealing weapons

or contraband where plaintiffs had shown the strip search policy to be routine and

indiscriminate).  As the leading treatise on class action litigation states, "when the

party opposing the class has engaged in some course of conduct that affects a group

of persons and gives rise to a cause of action, one or more of the elements of that

cause of action will be common to all of the persons affected."  Alba Conte & Herbert

Newberg, Newberg on Class Actions, § 3.10 (4th ed. 2002).

 Plaintiffs satisfy this requirement because the following issues of law and fact

are common to all members of the proposed:

   a.   whether the Constitution provides a maximum length of time

    measured in hours beyond which the District cannot hold an

inmate in the DC Jail or the CTF after a judicial officer orders his placement in a halfway house, either based on a reasonableness standard or a bright line rule, or a combination of the two with shifting presumptions;

b.  whether the District exceeded that maximum for each Overdetention Class member;

c. whether Defendant District of Columbia has a pattern and practice of holding inmates in the DC Jail or the CTF after a judicial officer orders their placement in a halfway house;

d. whether Defendant District of Columbia has a pattern and practice of being deliberately indifferent to the rights of inmates by holding inmates in the DC Jail or the CTF after a judicial officer orders their placement in a halfway house;

e. whether Defendant District of Columbia's acts as alleged herein violate the Constitution of the United States by holding inmates in the DC Jail or the CTF after a judicial officer orders their placement in a halfway house;

f.   whether such policy, if found to exist, violates the Fourth and/or Fifth and/or Eighth Amendments;

g.   whether plaintiff and Overdetention Class members have sustained damages and, if so, the proper measure of such damages;

h.   whether determination of damages suffered by a statistically representative sample of the Overdetention Class provides the basis for determination of all class members' damages except those who opt out; and

i.   whether plaintiff and the Overdetention Class members are entitled to equitable relief, and, if so, what is the nature of that relief.

**3.    *The Named Plaintiffs Raise Claims Typical of the Proposed Overdetention Class.***

Rule 23(a)(3) mandates that "the claims or defenses of the representative parties [be] typical of the claims or defenses of the class."  The Overdetention Class Named Plaintiffs meet the typicality requirement.

While commonality requires a showing that the members of the class suffered an injury resulting from the defendant's conduct, the typicality requirement focuses

14

on whether the representatives of the class suffered a similar injury from the same course of conduct.  Bynum I, 214 F.R.D. at 34-35.  This Court has explained that the purpose of the typicality requirement is to "ensure[ ] that the claims of the representative and absent class members are sufficiently similar so that the representatives' acts are also acts on behalf of, and safeguard the interests of, the class."  Littlewolf v. Hodel, 681 F. Supp. 929, 935 (D.D.C. 1988) (citation omitted).  It has also explained that "[a] plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to a claim of another class member's where his or her claims are based on the same legal theory."  Stewart v. Rubin, 948 F. Supp. 1077, 1088 (D.D.C. 1996), aff'd, 124 F.3d 1309 (D.C. Cir. 1997).  The requirement has been liberally construed by courts.  See In re Vitamins Antitrust Litig., 209 F.R.D. 251, 260 (D.D.C. 2002) (citing cases).

If the named plaintiffs' claims are based on the same legal theory as the claims of the other class members, it will suffice to show that the named plaintiffs' injuries arise from the same course of conduct that gives rise to the other class members' claims.  Bynum I, 214 F.R.D. at 35.  The claims of the named plaintiffs are founded upon the same legal theory as those of the other plaintiffs - that defendant violated Section 1983 when it overdetained them in the DC Jail or CTF after a judge ordered them placed in a halfway house, in violation of the Fourth, Fifth and Eighth

Amendments.  Additionally, the alleged injuries suffered by the named plaintiffs arise

from the same conduct that gave rise to the claims of the other class members,

namely, defendant's detaining them in the DC Jail or CTF after a judge ordered them

placed in a halfway house.

The following brief descriptions of the Overdetention Class Named Plaintiffs'

searches show how their experiences are typical of all persons who constitute the

putative class:

<u>Plaintiff Gregory Holloway</u>.  On 7/8/03 a Superior Court judge committed Mr.

Holloway to the DC Jail in connection with Superior Court case F 2562-03.  On

8/25/03 a Superior Court judge ordered Mr. Holloway placed in a halfway house in

case F 2562-03.  However, Mr. Holloway was held in the DC Jail until 9/19/03

when he was transferred to Hope Village halfway house.  Thus, Mr. Holloway spent

25 days in the DC Jail when he should have been in the Hope Village halfway house.

Mr. Holloway was released from the halfway house into his own custody on

10/24/03.  Plaintiffs' Exhibit 6, Holloway commitment papers.

<u>Plaintiff Karmese Washington</u>.  On or about 6/20/05 a Superior Court judge

committed Ms. Washington to the DC Jail in connection with Superior Court case F

3435-05 pending payment of a $200 bond.  On or about 6/24/05 a Superior Court

judge ordered Ms. Washington placed in a halfway house in case M 7544-05 and case

number M 6184-05.  Bond was posted for Ms. Washington in case F 3435-05, the

bond receipt was delivered to the DC Jail, and the Records Office discharged the

bond hold on 6/25/05, thus freeing her for transfer to a halfway house.   However, as

of 8/2/05, the date of filing of the Second Amended Complaint, Ms. Washington

remains held in the CTF.  Ms. Washington was placed in the Fairview Halfway

House for Women on August 4, 2005. Plaintiffs' Exhibit 7, Plaintiffs' Exhibit # 8.

Plaintiff Ricky Robertson.  On or about July 7, 2004 a judicial officer of the

Superior Court of the District of Columbia committed Mr. Robertson to the D.C.

Jail to serve a sentence of 120 days in connection with case M-13587-02  On or

about September 13, 2004 a judicial officer ordered Mr. Robertson placed in a

halfway house in case number F-7722-03.  Mr. Robertson completed serving the

sentence in case M-13587-05 on or about November 4, 2004 but was never

placed in a halfway house until January 13, 2005.  Mr. Robertson was ordered

released from the custody of the Department of Corrections on or about February

18, 2005.  Plaintiffs' Exhibit 9, Robertson commitment papers.

**4. *Adequacy of Representation: Class Representatives Adequately
Represent the Class; Class Counsel Adequately  Represent the
Class***

Rule 23(a)(4) demands that the class have adequate representation.  Coleman v.

Pension Benefit Guaranty Corp., 196 F.R.D. 193, 198 (D.D.C. 2000); Pigford, 182

F.R.D. at 350; <u>Kifafi</u>, 189 F.R.D. at 177; <u>Vargas</u>, 119 F.R.D. at 295.  Adequacy

involves both adequacy of the named plaintiff and adequacy of counsel.  This

requirement is met when: (1) there is no conflict of interest between the legal interests

of the named plaintiffs and those of the proposed class; and (2) counsel for the class

is competent to represent the class.  <u>Twelve John Does v. District of Columbia</u>, 326

U.S. App. D.C. 17, 117 F.3d 571, 575 (D.C. Cir. 1997).

In this case, no conflicts of interest exist between the representative plaintiffs

and the proposed class.  The named plaintiffs seek to redress the deprivation of rights

conferred upon them by the United States Constitution.  The representative plaintiffs'

interests do not conflict with those of the putative class.  Just the opposite, the issues

presented by the named representatives mirror those faced by the putative class,

which stands only to gain by this action.  Plaintiffs' Exhibits ## 3, 4, 5 (class

representative declarations).

Rule 23(g)(1)(C)(i) requires the Court to appoint adequate counsel to represent

the class. Rule 23(g) requires that the court must consider the following in appointing

class counsel: "[(1)] the work counsel has done in identifying or investigating

potential claims in the action, [(2)] counsel's experience in handling class actions,

other complex litigation, and claims of the type asserted in the action, [(3)] counsel's

knowledge of the applicable law, and [(4)] the resources counsel will commit to

representing the class." See e.g.  Noble v. 93 Univ. Place Corp., 224 F.R.D. 330

(D.N.Y. 2004). The court may consider any "other matter pertinent to counsel's

ability to fairly and adequately represent the interests of the class." Id.

Plaintiffs' counsel have done extensive research in this case, including taking

numerous affidavits and interviewing numerous persons who have knowledge of the

case. Plaintiffs' counsel William Claiborne has met with numerous community and

public interest groups to prepare for the case, and has interviewed many persons who

have been incarcerated in the DC Jail, CTF and halfway houses.  Mr. Claiborne has

also interviewed many attorneys who practice criminal defense law in the District of

Columbia Superior Court and the District of Columbia District Court.  Mr. Claiborne

himself has formerly practiced criminal defense law in the District of Columbia

Superior Court and still represents indigent defendants there on a pro bono basis,

Plaintiffs' counsel are competent to represent the members of the class. As

described in their declarations attached herein, they are experienced attorneys with

sufficient staff and financial resources to prosecute the case and any appeals will

provide the primary source of legal representation in this case. Counsels' affidavits

are attached as Plaintiffs' Exhibits ## 17 and 18.

The attorneys are experienced civil rights class action litigators who have

participated in multiple class actions.  This Court has previously ruled that William

Claiborne and Barrett Litt are competent to represent the plaintiffs in the <u>Bynum</u> case <u>Bynum v. Government of the District of Columbia</u>, 02-956(RCL).  <u>Bynum v. Gov't of the Dist. of Columbia</u>, 384 F. Supp. 2d 342 (D.D.C. 2005) (confirming William Claiborne and Lynn Cunningham as class counsel, and appointing Barrett S. Litt as class counsel).

In fact, Plaintiffs' counsel litigated or served as amicus in several of the leading reported decisions in the area.  (<u>Bynum I and II</u>, William Claiborne and Barrett Litt, counsel; <u>Powell v. Barrett</u>, William Claiborne and Barrett Litt, counsel; <u>Tardiff v. Knox County</u>, 365 F.3d 1 (1st Cir. 2004); William Claiborne, <u>amicus</u> counsel).

Plaintiffs' counsel is Litt, Estuar, Harrison, Miller & Kitson, a firm specializing in civil rights and Fourth Amendment litigation. Litt, Estuar is a boutique, civil rights and public interest law firm specializing in all types of civil rights litigation, including police abuse and class action cases. Mr. Litt has handled numerous class actions, including several in this court. He was lead counsel in the largest Overdetention case to date in the country, <u>Williams v. Block</u>, in Los Angeles, which settled for $27 Million (including claims for illegal strip searches after being entitled to release and returned from court).

Mr. Litt and his firm have successfully litigated many other class actions and multi-party   public interest cases, which are detailed in his declaration. (See

20

Declaration of Barrett S. Litt filed concurrently herewith). Mr. Litt, co-lead counsel in this case, and his firms have been recognized on several occasions for their civil rights work. Id. Plaintiffs' counsels' credentials are impeccable.

Barrett S. Litt has practiced law for nearly thirty five years.  For the past twenty plus years, he has focused on complex civil litigation, constitutional law, civil rights law, class action litigation, and complex multi-party litigation including employment discrimination, police abuse and housing discrimination.  The resumes for Messrs. Claiborne and Litt are attached as Plaintiffs' Exhibits ## 17 and 18.

## C. RULE 23(B)(2): PLAINTIFFS SATISFY RULE 23(B)(2) REQUIREMENTS FOR CERTIFICATION OF  CLASS FOR INJUNCTIVE RELIEF

Rule 23(b)(2) provides for class certification where "the party opposing the class has acted .... on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole."  The complaint challenges defendant's blanket policy and practice of holding inmates in the DC Jail and CTF after a judicial officer has ordered them placed in a halfway house, and so certainly, plaintiffs allege this is a case in which defendant has acted on grounds "generally applicable to the class."

Defendant carries out the overdetentions either pursuant to a written policy or under an entrenched practice that reaches the level of a policy.  Plaintiffs satisfy this

requirement even if defendant carries out the overdetentions pursuant to an

entrenched practice rather than a written policy, because defendant "has acted in a

consistent manner toward members of the class so that his actions may be viewed as

part of a pattern of activity." 7A Charles Alan Wright & Arthur R. Miller, Federal

Practice and Procedure, § 1775 (2d ed. 1986) cited by Bynum I, 214 F.R.D. 37-38.

See also, Jones v. Goord, 190 F.R.D. 103, 112 (S.D.N.Y. 1999) (certifying a (b)(2)

class of prisoners alleging that they were unconstitutionally double-celled,

"notwithstanding defendants' argument that matters such as inmate screening is done

on a case-by-case basis by different prison officials at different facilities").

   Moreover, this case meets the certification requirements of both FRCP 23(b)(2)

and (b)(3).  Therefore, the Court can certify a "hybrid" Rule 23(b)(2) and (b)(3) class,

as demonstrated below.  Bynum I, 214 F.R.D. at 38-39, citing Eubanks v. Billington,

110 F.3d 87, 96 (D.C. Cir. 1997).

   The Eubanks Court held that:

> when a (b)(2) class seeks monetary as well as injunctive or declaratory relief
> the district court may exercise discretion in at least two ways. The court may
> conclude that the assumption of cohesiveness for purposes of injunctive relief
> that justifies certification as a (b)(2) class is unjustified as to claims that
> individual class members may have for monetary damages. In such a case, the
> court may adopt a "hybrid" approach, certifying a (b)(2) class as to the claims
> for declaratory or injunctive relief, and a (b)(3) class as to the claims for
> monetary relief, effectively granting (b)(3) protections including the right to
> opt out to class members at the monetary relief stage. Alternatively, the court

may conclude that the claims of particular class members are unique or sufficiently distinct from the claims of the class as a whole, and that opt-outs should be permitted on a selective basis. . . . We view Rule 23(d)(5) to be broad enough to permit the court to allow individual class members to opt out of a (b)(1) or (b)(2) class when necessary to facilitate the fair and efficient conduct of the litigation.

Eubanks, 110 F.3d at 96.

The Eubanks decision thus presents this Court with two options in cases such as the present action: it may decide to certify a "hybrid" (b)(2) and (b)(3) class, or it may certify a (b)(2) class and afford individual class members the due process protections afforded to (b)(3) class members.

Plaintiffs have satisfied the requirements of certifying the present action as a (b)(3) class action including the Rule 23(b)(3) "predominance" test, as plaintiffs show below. Therefore, the Court can certify the present action as a hybrid (b)(2) / (b)(3) class action, a form expressly authorized by the D.C. Circuit in Eubanks, as this Court held in the opinion certifying the Overdetention Class component of this case.  Bynum I, 214 F.R.D. at 41.

As the Court stated in Bynum I certifying the Overdetention Class,

"…the Court [may] certify a (b)(2) class with respect to the plaintiffs' claims for injunctive and declaratory relief, and a (b)(3) class with respect to their claims for monetary damages. All of the class members with damages claims against defendant will thus be afforded all of the due process protections afforded to members of a (b)(3) class, including notice and opt-out rights. The maintenance of this action as a hybrid class action will provide a just

and efficient forum for the resolution of all of the claims asserted."
Bynum I, 214 F.R.D. at 41.

### D. RULE 23(B)(3): PLAINTIFFS SATISFY RULE 23(B)(3) REQUIREMENTS FOR CERTIFICATION OF CLASS FOR MONEY DAMAGES

To certify a class under Rule 23(b)(3), the Court must find that "the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Bynum I, 214 F.R.D. at 39. In making the (b)(3) certification determination, the Court should consider four factors: (1) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (3) the desirability or undesirability of concentrating the litigation of the claims in a particular forum; and (4) the difficulties likely to be encountered in the management of a class action. Id.

These requirements may also be divided into two separate requirements: (1) that factual and legal questions common to the class members predominate over any such questions affecting only individual class members, and (2) that maintaining the action as a class action will be superior to other available methods of adjudication.

24

Id. at 39.

### 1.     *Common Questions of Law and Fact Predominate.*

The first requirement is that common factual and legal issues predominate over any such issues that affect only individual class members.  There is no magic formula in making this determination.  Bynum I, 214 F.R.D. at 41.  The common questions of law and fact "predominate over any questions affecting only individual members" in this case because the allegations of an unconstitutional custom and practice of overdetentions relate to the **defendant's conduct**, and therefore proof of liability will not vary among the class members.  See In re Vitamins Antitrust Litig., 209 F.R.D. 251 (D.D.C. 2002) (common question predominated in an antitrust case because where the allegations of price-fixing related to the defendant's conduct, the proof would not vary among the class members).

Generally speaking, if the action complained of on behalf of the putative class members arises out of a single set of operative facts, then the commonality requirement will have been satisfied.  If that common nucleus of operative facts forms the central issue in the case, even if individualized issues of proof are present, the predominance hurdle will have been cleared.  Dornberger v. Metropolitan Life Insurance Company, 182 F.R.D. 72, 77 (S.D. N.Y. 1998) (Rule 23(b)(3) class where insurance policies sold in nine overseas countries without regulatory approval).  See

also Wells v. Allstate Insurance Co., 210 F.R.D. 1, 12 (D.D.C. 2002) (Rule 23(b)(3) class certified where common questions predominated in consumer action involving denial of insurance claims); Rossini v. Olgivy & Mather, 798 F.2d 590, 598-599 (2d Cir. 1986) (reversing decertification of Rule 23(b)(3) class as to employee claims of sex discrimination in training and promotion alleging pattern and practice of employer).

Plaintiffs can point to at least two key questions, one of fact and one of law, common to all plaintiffs – whether defendant has a custom, or pattern and practice, of holding inmates in the DC Jail or CTF after a judge has ordered their placement in a halfway house, and whether the overdetentions violate the Constitution – the resolution of which would dispose of the issue of whether defendant is liable to plaintiffs. This suffices to show that common questions of law and fact predominate over any questions affecting individual members. Bynum I, 214 F.R.D. at 39. The leading commentators on the federal courts endorse this view, and have explained that "when one or more of the central issues in the action are common to the class and can be said to predominate, the action will be considered proper under Rule 23(b)(3) even though important matters will have to be tried separately." 7A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1778 (2d ed. 1986).

Damages determinations will not overpower the predominance in this case.

26

First, the presence of individual damages does not preclude a finding that common

questions of law and fact predominate over any individual questions.  See McCarthy

v. Kleindienst, 741 F.2d 1406, 1415 (D.C. Cir. 1984).  This Circuit has long held that

the mere existence of individual damages issues in a (b)(3) class does not cause

individual issues to predominate over common issues on liability or causation so as to

justify denying certification of the class, when the liability issue is susceptible of

class proof.  McCarthy, 741 F.2d at 1415.

The First, Second, Fourth, Fifth, Sixth, Seventh and Eleventh Circuits, have

recently reaffirmed that the mere existence of individual damages issues in a (b)(3)

class does not cause individual issues to predominate over common issues on liability

or causation so as to justify denying certification of the class, when the liability issue

is susceptible of class proof. Tardiff, 365 F.3d at 6; In re Visa Check/MasterMoney

Antitrust Litigation, 280 F.3d 124, 141 (2d Cir. 2001); Gunnells v. Healthplan Servs.,

348 F.3d 417, 426 (4th Cir. 2003); Bertulli v. Indep. Ass'n of Cont'l Pilots, 242 F.3d

290, (5th Cir. 2001); Carnegie v. Household Int'l, Inc., 2004 U.S. App. LEXIS 14635

(7th Cir. July 16, 2004) and Allapattah Servs. v. Exxon Corp., 333 F.3d 1248, 1261

(11th Cir. Fla. 2003); Klay v. Humana, Inc., 382 F.3d 1241, 1259 (11th Cir. 2004).

The First, Second and Seventh Circuits have recently gone further and recognized

that since most class actions settle, manageability (including predominance issues)

issues – which generally do not arise until the damages phase – will in fact never

arise at all. As the Seventh Circuit stated in <u>Carnegie</u>, 2004 U.S. App. LEXIS 14635,

* 10 (Posner, J.):

> Often, and possibly in this case as well, there is a big difference from the standpoint of manageability between the liability and remedy phases of a class action. The number of class members need have no bearing on the burdensomeness of litigating [RICO liability]. Whether particular members of the class were defrauded and if so what their damages were are another matter, and it may be that if and when the defendants are determined to have violated the law separate proceedings of some character will be required to determine the entitlements of the individual class members to relief. That prospect need not defeat class treatment of the question whether the defendants violated RICO. Once that question is answered, if it is answered in favor of the class, a global settlement along the lines originally negotiated (though presumably with different dollar figures) will be a natural and appropriate sequel. And if there is no settlement, that won't be the end of the world. Rule 23 allows district courts to devise imaginative solutions to problems created by the presence in a class action litigation of individual damages issues. Those solutions include "(1) bifurcating liability and damage trials with the same or different juries; (2) appointing a magistrate judge or special master to preside over individual damages proceedings; (3) decertifying the class after the liability trial and providing notice to class members concerning how they may proceed to prove damages; (4) creating subclasses; or (5) altering or amending the class. (internal citations omitted)

In this case, individual damage issues are obviated by plaintiffs' proposed

sampling procedure, which this Court approved in the <u>Bynum</u> case.

The proof needed to resolve the liability issue will primarily be testimony and

affidavits by persons held in the DC Jail or CTF after being ordered into halfway houses,

staff at the halfway house and the Department of Corrections, and defendant's computer data (from the Department of Corrections' JACCS booking computer, and, if neccassary, the Superior Court's CIS court docketing system). The case will involve generalized evidence which will prove or disprove liability on a class-wide basis, and resolution of that question will dispose of the issue of defendant's liability to plaintiffs in this action.[3]

### 2.    Treatment as a Class Action is Superior.

"Rule 23(b)(3) favors class actions where common questions of law or fact permit the court to 'consolidate otherwise identical actions into a single efficient unit.'" Wells v. Allstate Ins. Co., 210 F.R.D. 1, 12 (D.D.C. 2002 ) (quoting Dellums v. Powell, 566 F.2d 167, 189 (D.C. Cir. 1977)).

Class treatment is appropriate for cases like this one, in which the individual claims of many of the putative class members are so small that it would not be economically efficient for them to maintain individual suits. Thus, for example, in a case where the plaintiffs sought certification of a class of African-American women alleging that they had been unlawfully detained and searched at a major airport, the court determined that class treatment would be a superior method of adjudication:

There may be a significant savings of judicial and legal resources by

---

[3] See In re Lorazepam, 202 F.R.D. at 29.

> jointly resolving the issues of whether plaintiffs were entitled to a
> judicial determination of their being held and whether they were entitled
> to be able to contact others. If liability is proven, many of the plaintiffs
> may not be entitled to a large amount of damages because not held for a
> lengthy period of time. Therefore, for those plaintiffs, a class action may
> be the most practical means for resolving these issues.

Anderson v. Cornejo, 199 F.R.D. 228, 243 (N.D. Ill. 2000).  Similarly, in Smith v.

Montgomery County, Md., 573 F. Supp. at 613, the court certified a class of persons

alleging they had been unlawfully strip-searched at a county detention center,

explaining that "resolution of the liability and damages issues within the context of a

class action is far more efficient than individual prosecution of damages actions.  A

class action is also the fairest means to settle this controversy since it is unlikely that

most class members would pursue these claims on their own."

Realistically, damages for the overdetentions will be inadequate to attract

sufficient counsel to represent individuals on a case-by-case basis.  The class action

is, therefore, the only method available to most class members for obtaining any

redress at all. Separate counsel for individual class members is simply not available.

Moreover, if separate counsel were available, managing hundreds, much less

thousands of individually filed lawsuits would create a serious administrative

challenge for the Court.

Class action treatment is the superior form of adjudication because the class

members could not afford to bring individual lawsuits because their claims are too

small.  Gunnells v. Healthplan Servs., 348 F.3d 417, 426 (4th Cir. 2003).  Plaintiffs'

counsel are aware of only one lawsuit challenging the practice of systematically

holding inmates entitled to placement in the DC Jail or CTF, the lawsuit filed by

Milton Taylor.  Taylor, *supra,* 409 F.3d at 430.  Mr. Taylor had to file his lawsuit pro

se, and, on appeal, his case was handled pro bono by a court appointed lawyer.  Id.

The case is manageable as a class action because all questions of liability and

damages can be calculated using information in the defendant's computer databases, [4]

and damages can be calculated in individualized proceedings, Gunnells v. Healthplan

Servs., 348 F.3d 417, 425, 429 (4th Cir. 2003), or by statistical sampling as described

in plaintiffs' trial plan and expert opinion from Dr. Berk.

Secondly, plaintiffs can establish aggregate damages for the class using a

representative sample chosen under court supervision from which damages could be

extrapolated for the whole class.  See Hilao v. Estate of Marcos, 103 F.3d 767, 774

(9th Cir. 1996); Newberg on Class Actions, Chapter 10, Proof and Distribution of

Aggregate Class Damages.  Attached hereto as Plaintiffs' Exhibit 14 is an affidavit

---

[4] *See* Southwestern Bell Mobile Systems, Inc., d/b/a Cellular One, (No. 02-1760) 2003 U.S. App.

LEXIS 4020; Spriggs, Representing Plaintiffs in Title VII Cases: Use of the Defendant's Electronic

Records, Ch. 15.

from Richard Berk, Ph. D., plaintiffs' statistical expert, rendered in a similar case plaintiffs' counsel are prosecuting in Atlanta, Georgia, explaining how plaintiffs could establish damages for the class using a representative sample chosen under court supervision from which damages could be extrapolated for the whole class. Professor Berk's CV and other information about him is available at http://www.stat.ucla.edu/~berk/.  Plaintiffs will obtain an opinion from Dr. Berk tailored to this case when more is known.  But, the general sampling principles are applicable to this case.

The plaintiffs in Dellums v. Powell, *supra,* whose claims included a claim for damages arising from overdetention, submitted a damages question to the jury that allowed the jury to assign a schedule of damages based on length of detention that was then to be applied to the plaintiffs on a ministerial basis.  566 F.2d at 208.  Working with the Form of Verdict designed by the district court, the jury was able to award damages along a sliding scale which took into account, in a rough way, the different experiences of different members of the class, without losing administrative feasibility.  Id.

This Court approved a trial plan using this methodology in the Bynum case. Attached is a proposed trial plan for this case.  Plaintiffs' Exhibit # 16.

In this matter, it is plain that the challenges of managing a class action are minimal while the benefits are considerable.  Members of this class are easily

identified from JACCS, the Department of Corrections computerized inmate management system database.  Additionally, the District of Columbia maintains the last address for Department of Corrections' inmates, thus facilitating the process of notification.  Other advantages are similarly obvious: the failure to certify this class will effectively extinguish any hope that the majority of class members have for recovering damages for their injuries.  This may be the strongest argument in support of class certification.

As for the notice requirement, Rule 23(c)(2) requires only that the Court "direct to the  members of the class the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  Defendant has conceded that it possesses a last known address for each inmate that it has incarcerated in JACCS or in the Superior Court CIS.  Sending notices to the last known address for each former inmate who is a member of the class, and whose current address cannot be identified through reasonable efforts (e.g., Internet searches), will satisfy the "individual notice" requirement of the Rule.  As for class members who cannot be identified through reasonable efforts, plaintiffs need only provide them with the best notice practicable under the circumstances. Plaintiffs' proposed notice procedures are attached as part of plaintiffs' proposed trial plan.  Plaintiffs' Exhibit # 16.

Here, the common questions clearly do predominate, treatment as a class action is superior and certification should be granted.

## IV.  APPLICATION OF LAW TO THE MALE EQUAL PROTECTION OVERDETENTION CLASS

The Male Equal Protection Class also satisfies the Rule 23 criteria for certification as a "hybrid" class under both 23(b)(2) and (3).  See, e.g., Eubanks v. Billington, 1997 U.S. App. LEXIS 6654 (D.C. Cir. 1997); Bynum v. District of Columbia, 214 F.R.D. 27 (D.D.C. 2003) (overdetention class)("Bynum I"); Bynum v. District of Columbia, 217 F.R.D. 43 (D.D.C. 2003)(strip search class) ("Bynum II"). Plaintiff therefore moves the Court to certify a Rule 23(b)(2) class for injunctive relief and a Rule 23(b)(3) class on damages for the Male Equal Protection Class as well.

The Second Amended Complaint defines the proposed Male Equal Protection Class as:

> (a) Each male person who has been, is, or will be incarcerated in any District of Columbia Department of Corrections facility in the three years preceding the filing of this action up to and until the date this case is terminated; and (b) who was held in the DC Jail or the CTF after a judicial officer ordered his placement in a halfway house.

34

The definition of the proposed Male Equal Protection Class overdetention claim set forth in plaintiffs' Second Amended Complaint easily satisfies the requirement that a class exist because plaintiffs' proposed Male Equal Protection Class class definition sets forth general parameters that limit the scope of the class to such a degree that it is administratively feasible for the Court to determine whether a particular individual is a member of the Male Equal Protection Class.  Bynum I, 214 F.R.D. at 31-32.

Additionally, the Male Equal Protection Class satisfies the four requirements of Fed. R. Civ. P. 23(a).  The Male Equal Protection Class satisfies the numerosity because there are more than 40 men in the class, and joinder is impractical. Plaintiffs' Exhibit # 2; Plaintiffs' Exhibit ## 10-14 (attorney affidavits).  There are numerous common questions of law and fact.  Second Amended Complaint ¶ 106. The claims of Mr. Holloway and Mr. Robertson are typical of the Male Equal Protection Class, and they adequately represent the class, for the reasons given above. Plaintiffs' Exhibits #3, 4 and 5.  William Claiborne and Barrett Litt can adequately represent the class under Fed. R. Civ. P. 23(g), for the reasons stated above.  Their affidavits are attached as Plaintiffs' Exhibits 17 and 18.

The Male Equal Protection Class qualifies for class action treatment under Rule 23(b)(2) because all plaintiffs are affected by defendant's common policy or practice.  Also, since plaintiffs satisfy the (b)(3) requirement, this case qualifies for class action

treatment as a hybrid class.

Questions of law and fact predominate.  Resolution of defendant's liability in the case turns on two of the many common questions of law and fact, does the Department of Corrections have a practice or policy of holding inmates in the DC Jail or CTF after a judge has ordered their placement in a halfway house, and does this practice/ policy violate the Constitution, and this suffices to establish predominance. Bynum I, 214 F.R.D. at 39.

Finally, class action treatment is the superior method, for the reasons discussed above in connection with the Overdetention Class.

## V.    **CONCLUSION**

For the foregoing reasons, the Overdetention Class Named Plaintiffs' motion and the Male Equal Protection Class Named Plaintiffs' motion for class action treatment pursuant to FRCP 23(a), 23(b)(2), 23(b)(3) and FRCP 23(c)(4) should be granted.

Respectfully submitted,

_____sig_____
WILLIAM CLAIBORNE
D.C. Bar # 446579
Counsel for plaintiffs
717 D Street, NW , Suite 210
Washington, DC 20004

Phone 202/824-0700
Fax 202/824-0745