**Plaintiffs' Exhibit # 16**

UNITED STATES DISTRICT COURT

OF THE DISTRICT OF COLUMBIA

| | |
|---|---|
| GREGORY HOLLOWAY, et al<br><br>        Plaintiffs<br><br>v.<br><br>GOVERNMENT OF THE DISTRICT OF COLUMBIA,<br><br>        Defendant | Civil Action No:    **05-1502 (RCL)**<br><br>Next Event: None scheduled |

## PLAINTIFFS' PROPOSED TRIAL PLAN AND PROPOSED NOTICE PROCEDURES

## I.  INTRODUCTION

This is a §1983 class action case alleging the overdetention of inmates in the

DC Jail and CTF after a judicial officer has ordered them placed in a halfway house.

There is a proposed class of men and women inmates held in the DC Jail and CTF

after a judicial officer has ordered them placed in a halfway house past their court

ordered release dates ("Overdetention Claim"), and a proposed class of men inmates

only held in the DC Jail and CTF after a judicial officer has ordered them placed in a

halfway house (Male Equal Protection Class).  This proposed trial plan is submitted

in support of plaintiffs' motion for class action treatment.

Plaintiffs' Second Amended Complaint defines the proposed Overdetention Class as:

(a) Each person who has been, is, or will be incarcerated in any District of Columbia Department of Corrections facility in the three years preceding the filing of this action up to and until the date this case is terminated; and (b) who was held in the DC Jail or the CTF after a judicial officer ordered his placement in a halfway house.

The Second Amended Complaint defines the proposed Male Equal Protection Class as:

(a) Each male person who has been, is, or will be incarcerated in any District of Columbia Department of Corrections facility in the three years preceding the filing of this action up to and until the date this case is terminated; and (b) who was held in the DC Jail or the CTF after a judicial officer ordered his placement in a halfway house.

## II.    PROPOSED TRIAL PLAN

Plaintiffs hereby present this proposed trial plan ("Proposed Trial Plan"), which explains Plaintiffs' planned approach to discovery, class notice, and trial. This Proposed Trial Plan is meant to aid the Court in determining effective discovery management, the development of notice procedures, and management of the trial of the case. The Proposed Trial Plan is not necessarily meant to be final in the matters of witnesses or exhibits; expert reports; proposing jury instructions and special verdict forms, or even adopting a particular methodology of determining damages for class members. Moreover, the determination of a trial plan will depend on the Court's decisions regarding the most efficient and reasonable method for proceeding to trial on a number of discovery matters presently pending. On this basis, Plaintiffs

reserve the right to present a revised and more detailed trial plan once discovery is complete and the trial date nears.

## III.         BIFURCATION OF LIABILITY AND DAMAGES PHASES

Plaintiffs propose that the trial be bifurcated into (1) a liability phase (including determination of injunctive relief) and (2) a damages phase.  Rule 42(b).  Bifurcation of civil rights class actions into a liability phase and a damages phase is widely recognized and accepted.  See, e.g., Berger v. Iron Workers Reinforced Rodmen, Local 201, 170 F.3d 1111 (D.C. Cir. 1999); Neal v. Director of Department of Corrections, 1995 U.S. Dist. LEXIS 11543 (D.D.C. 1995) (Memorandum Opinion IV) (Procedures for Absent Class Members) rev'd on other grounds sub nominee, Bonds v. District of Columbia, 93 F. 3d 801 (D.C. Cir. 1996).  Rule 42(b) permits trial of individual, discrete issues.  As long as separate juries do not re-examine previously resolved fact determinations, bifurcation does not violate the Seventh Amendment.  Robinson v. Metro-North Commuter R.R., 267 F.3d 147, 170 (2d Cir. 2001).  This proposal tracks the Court's orders certifying each of the classes as a Eubanks hybrid class. Eubanks v. Billington, 110 F.3d 87, 96 (D.C.Cir.1997).

The central issues to be determined in the liability phase are: (1) whether the District has a pattern and practice of overdetaining inmates in the DC Jail or CTF after a judicial officer has ordered their placement in a halfway house; (2) whether the District violates the constitutional rights of inmates by overdetaining inmates in the

DC Jail or CTF after a judicial officer has ordered their placement in a halfway house; (3) whether the District has a pattern and practice of overdetaining male inmates in the DC Jail or CTF after a judicial officer has ordered their placement in a halfway house; (4)  whether the District violates the Equal Protection Clause constitutional rights of male inmates by overdetaining virtually all mail inmates and virtually no female inmates in the DC Jail or CTF after a judicial officer has ordered their placement in a halfway house; (5) what length of overdetention constitutes an unconstitutional overdetention.  These issues can probably be determined on a motion for summary judgment on the applicable legal standard.

Phase II of the trial will address damages.  Plaintiffs propose determining damages (1) in a single, class-wide damages trial using "sampling," or, alternatively, (2) by mini-trials tried to judges (and magistrates if defendant agrees), or, alternatively, (3) by a claims procedure agreed upon by the parties.

"Sampling," discussed below, is the process of collecting information from fewer than all potential sources.  Laurens Walker, Essay: A Model Plan To Resolve Federal Class Action Cases By Jury Trial, 88 Va. L. Rev. 405 (2002).  In this context, sampling involves randomly selecting a fraction of the plaintiffs in the class, trying the damages of each plaintiff in the sample to a jury, extrapolating the sampled damage award to determine damages for the class as a whole, and then distributing

the class damages among class members according to a formula or point system determined by the jury or the Court.

Plaintiffs believe that the damages due the class can be determined in a single jury proceeding.  In preparation for the trial, an expert working under the supervision of a special master will generate a random sampling of the class. Through reasonable discovery, defendant can obtain facts relevant to the sample members' experiences during the class period.  Using this data, the parties' experts can then extrapolate damages for the entire class.

## IV.    NOTICE PROCEDURES

Notice to class members is not required at Phase I for either class because the issue of liability falls under Rule 23(b)(2).  Class actions seeking declaratory or injunctive relief under Rule 23(b)(2) are not subject to the individual notice requirements of Rule 23(c)(2).  Stolz v. United Broth. of Carpenters and Joiners of America, 620 F. Supp. 396 (D. Nev. 1985).

Notice is required for Phase II because damages are integral to a Rule 23(b)(3) class.  Moreover, notice in the case addresses any due process objections class members might have to a class-wide determination of damages.  Objecting class members would be allowed to opt out of the class in favor of an individual jury trial on damages.  The Court can determine the content of the notice after it rules on the methodology of proving damages.

Plaintiffs submit under separate cover their finalized proposals for notification procedures at a later date.

## V.     PHASE I – TRIAL OF LIABILITY

<u>Determination of liability</u>.  Determination of liability can be made either by trial or by motion for summary judgment.  The fact that the Department of Corrections had a practice of holding practically every person (or at least practically every male) ordered into a halfway house in the DC Jail or CTF for weeks even after a judge had ordered his placement in a halfway house during the class period can be established through a motion for summary judgment. Any issues of whether any of those overdetentions could be validated on other grounds (which plaintiffs contend they could not but defendants presumably contend otherwise) would also be resolved. The result would be that the liability phase would determine who was unlawfully held in a halfway house.

 If liability were proved on the Overdetention Class, it would be a simple matter to show liability under the Male Equal Protection Class.

<u>Methods of proof</u>.  Plaintiffs will prove the District's liability with evidence based upon declarations of class members, statistical sampling, analysis of the District's own computer records, deposition testimony and witness testimony.

The use of statistical evidence to prove liability in civil rights cases is well established.  Berger v. Iron Workers Reinforced Rodmen Local 201, 843 F.2d 1395, 1413 (D.C. 1998); Davis v. Califano, 613 F.2d 957 (D.C. Cir. 1979) ("statistical proof may alone be used, without presentation of specific instances of discrimination, to establish a prima facie case of employment discrimination"); Mitchell v. Diamond Cab Company of District of Columbia, 2003 U.S. Dist. LEXIS 12492, *25 (D.D.C. 2003) (motion for summary judgment) (collecting cases); Simon II, 2002 U.S. Dist. LEXIS 25632, *156  (E.D.N.Y. Oct. 22, 2002) (citing to extensive body of law review article discussing sampling to prove liability and making point that requiring individual trials on damages allows wrongdoer to avoid responsibility for conduct).  Both scholars and courts have recognized that, in many cases, statistical methods actually provide a more accurate form of evidence than individual testimony.  Simon II, 2002 U.S. Dist. LEXIS 25632, at *161.

Many categories of federal cases routinely use statistical methods to determine liability and damages.  See, e.g.,  Castaneda v. Partida, 430 U.S. 482, 97 S. Ct. 1272, 51 L. Ed. 2d 498 (1977) (statistical data to prove discrimination in jury selection); Burger (employment discrimination); Zippo Manufacturing Co. v. Rogers Imports, Inc., 216 F. Supp. 670 (S.D.N.Y. 1963) (Feinberg, J.) (survey data in trademark infringement case); Cimino v. Raymark Indus., 751 F. Supp. 649, 659 (E.D. Tex. 1990) (discussing statistics and its applications in federal cases) rev'd, Cimino v.

Raymark Indus., Inc., 151 F.3d 297 (5th Cir. 1998).  Courts frequently permit

evidence of life-expectancy or mortality tables when determining damages.  See,

Ageloff v. Delta Airlines, Inc., 860 F.2d 379 (11th Cir. 1988); Asana v. United States,

616 F.2d 41 (2nd Cir. 1980); Larsen v. International Business Machines Corp., 87

F.R.D. 602 (E.D.Pa. 1980) (use of work-life tables).

Discovery.  The JACCS and CIS databases described in plaintiffs' motion to

certify and the Second Amended Complaint, other items needed to prove liability

such as defendant's witnesses, and limited discovery on liability of absent class

members only, as listed on plaintiffs' witness list to testify as fact witnesses, would

complete the discovery necessary for Phase I.  At this point, Defendant has no need to

depose absent class members for the liability phase of the trial beyond those on

plaintiffs' witness list.  Dellums v Powell, 566 F.2d 167, 187 (D.C. Cir. 1977)

(defendant has no absolute right to take discovery from absent class members).

Costs and Attorneys' Fees.  Plaintiffs will be entitled to an award of costs and

reasonable attorneys' fees for work expended to this date in this litigation should

plaintiffs' prevail at this Phase.  Neal v. Director of Department of Corrections, 1995

U.S. Dist. LEXIS 11543 at *14.

## VI.    IMPLEMENTATION OF INJUNCTIVE RELIEF.

Plaintiffs will request an injunction ordering that:

➢ The Department of Corrections place inmates ordered into a halfway house within 24 hours of the order;

➢ Each month, Defendant file with the Court, and provide to plaintiffs' counsel, a list of inmates awaiting placement in a halfway house, and the reason for the delay;

➢ Attorney's fees and costs for the injunctive phase be awarded, as well as monitoring fees for the foregoing.

.Discovery.  Plaintiffs may need additional discovery on the issue of injunctive relief.  The scope of that discovery can be determined after plaintiffs receive responses to discovery requests.

## VII.  PHASE II –DETERMINING COMPENSATORY DAMAGES

### A.    METHODOLOGY OF DETERMINING COMPENSATORY DAMAGES

Phase II of the trial will focus on class damages.  There are three basic methodologies of determining damages in class actions such as this: (1) in a single class-wide damages trial using "sampling," or, alternatively, (2) by mini-trials tried to judges (and magistrates if defendant agrees), or, alternatively, (3) by a claims procedure agreed upon by the parties.  Each of these methods is discussed below. See e.g. Simon II, 2002 U.S. Dist. LEXIS 25632, * 30 (discussing methods used to allocate aggregate damages among claimants).

Plaintiffs propose using the first method, a single trial using "sampling" to try class-wide damages on an aggregate basis to a jury, as the better approach. The use of acceptable sampling techniques, in lieu of discovery and the presentation of voluminous data from the entire class, will produce substantial savings in time and expense. For many class members, sampling techniques may provide the only practicable means to obtain recovery. See Manual for Complex Litigation §21.493, at 101 (3d ed. 1995).

B. TRIAL OF CLASS-WIDE DAMAGES USING "SAMPLING"

    1.    Aggregate trial

Aggregate trials of non-economic damages in civil rights cases are well established in this Circuit. Dellums v Powell, 566 F.2d at 189. In Dellums, the Court of Appeals upheld a jury's award of a lump sum of compensatory damages, and a distribution matrix of damages for unlawful arrests and illegal detentions based on the arrests. Id. The jury in Dellums decided on a lump sum for a class of protestors arrested without probable cause and illegally detained for varying periods. It then set a schedule according to which damages were assigned to subclasses based upon length of illegal incarceration. The district court then assigned class members to a subclass based upon the detention records of the government. Id. The Dellums Court specifically stated, "Nor do we think that determination of damages in this case requires individualization." Id.

There is a growing trend in favor of using aggregate damage trials.  3 Newberg on Class Actions §10.5 at 483-487 (4th ed. 2002);  Long v. Trans World Airlines, Inc., 761 F. Supp. 1320, 1326 (N.D. Ill. 1991) (court limits discovery to members of a sample of the class and rules plaintiffs can try a class-wide amount for damages including intangible injuries such as pain and suffering to a jury using sampling); Blue Cross & Blue Shield of N.J., Inc. v. Philip Morris, Inc., 133 F. Supp. 2d 162, 169 (E.D.N.Y. 2001); Simon II, 2002 U.S. Dist. LEXIS 25632.  See Essay: A Model Plan To Resolve Federal Class Action Cases By Jury Trial, 88 Va. L. Rev. 405.

### 2.  Sampling In General

Sampling involves randomly selecting a fraction of  class members, trying the damages of each plaintiff in the sample to a jury, extrapolating from the damages of the class to a lump sum for the class, and then distributing the damages among class members according to a formula, or matrix, or point system determined by the jury, or by the Court.  Michael J. Saks & Peter David Blanck, Justice Improved: The Unrecognized Benefits of Aggregation and Sampling in the Trial of Mass Torts, 44 Stan. L. Rev. 815 (1992); 3 Newberg on Class Actions § 10.5 at 483-487.  Courts have employed various distribution procedures to allocate class awards to class members, some of which are discussed below.

The most influential case in which tort damages were determined in a lump sum for the entire class in a rule 23(b)(3) class action is Hilao v. Estate of Marcos,

103 F.3d 767, 782 (9th Cir. 1996). In <u>Hilao</u>, working under the supervision of a court appointed special master and aided by a statistics expert, plaintiffs tried the liability and damages claims of approximately 10,000 class members on the basis of a sample of 137 class members chosen by statistical methods. The district court then distributed aggregate damages among the three subclasses based on an average of the representative awards for each subclass. One panel of the Fifth Circuit indicated approval of sampling techniques to determine class-wide tort damages, and even cited to <u>Hilao</u> with approval in <u>In re Chevron U.S.A.</u>, 109 F.3d 1016, 1020 (inferences about a group may be drawn from a sample only if the sample is scientifically chosen, because it is the reliability of the statistical method that protects the due process right of the defendant from having to pay a larger award than it owes), <u>citing to Hilao</u>, 103 F.3d at 782-84, 786. Aggregate damage trials using sampling are common in other types of federal cases. <u>Segar v. Smith</u>, 738 F.2d 1249, 1264 (D.C. Cir. 1984) (court calculated back pay and front pay in Title VII case on a class-wide basis using statistical methods); <u>Long</u>, 761 F. Supp. at 1326 (court limits discovery to members of a sample of the class and rules plaintiffs can try a class wide amount for damages including intangible injuries such as pain and suffering to a jury using sampling); <u>In re Sugar Industrial Antitrust Litigation</u>, 73 FRD 322, 353 (E.D. Pa. 1976) (court proposes determining dames in an aggregate class-wide approach using statistical methods); <u>Blue Cross & Blue Shield of N.J., Inc. v. Philip Morris, Inc.</u>, 133 F. Supp. 2d 162, 169 (E.D.N.Y. 2001); <u>Simon II</u>, 2002 U.S. Dist. LEXIS 25632, at *187.

"There is no constitutional, statutory, procedural, or theoretical bar to aggregate recovery for the class."  3 <u>Newberg on Class Actions</u> §10.5 at 483-487 (4th ed. 2002).  Sampling passes muster under both the Due Process Clause and the Seventh Amendment.

> a.     Sampling Does Not Violate the Seventh Amendment

The use of aggregated proof, based upon sampling in plaintiffs' damages claim, does not violate the Seventh Amendment.  <u>Olden v. Lafarge Corp.</u>, 383 F.3d 495, 509 (6th Cir. 2004) ((affirming Rule 23(b)(3)/23(c)(4)(A) certification of liability issues in a toxic pollutants exposure case)(if done properly, bifurcation will not raise any Seventh amendment "re-examination" issues); <u>Long</u>, 761 F. Supp. at 1326; <u>Simon II</u>, 2002 U.S. Dist. LEXIS 25632, at *187.  The most commonly raised objection to aggregate damage trials is that the procedure violates the defendant's Seventh Amendment jury trial right by denying the defendant a right to confront each plaintiff about his individual damages.  <u>Cimino v. Raymark Indus., Inc.</u>, 151 F.3d 297, 321 (5th Cir. 1998); <u>In re Fibreboard Corp.</u>, 893 F.2d 706, 709 (5th Cir. 1990). Defendants often contend that individualized discovery and jury trial are necessary because each class member may be differently situated with respect to damages.

However, nothing in the Seventh Amendment gives a defendant an individual right of confrontation.  Sampling is appropriate even if the Court were to find that defendant does have a right to try damages individually.  As the <u>Long</u> court put it,

"the very purpose of a statistical model is to account for individual issues." Long, 761 F. Supp. at 1326. Accordingly, the presence of individual issues does not, in itself, render the use of a statistical model inappropriate under the Seventh Amendment.

Moreover, Fifth Circuit cases invalidating the use of statistics to extrapolate findings of liability from a group of representative plaintiffs to all plaintiffs (in place of individual jury verdicts as to each plaintiff) are based on a peculiar feature of Texas law requiring that causation issues be decided on an individual basis. Cimino v. Raymark Indus., Inc., 151 F.3d 297, 321 (5th Cir. 1998); In re Fibreboard Corp., 893 F.2d 706, 709 (5th Cir. 1990). Any language in Cimino stating that the Seventh Amendment requires one-on-one damages trials with individual jury verdicts as to each plaintiff is dicta because the holding in Cimino on exposure to asbestos and causation was specifically based on Texas state law. This Circuit follows a different rule, and allows damages to be determined on a class-wide basis, Dellums v. Powell, 566 F.2d at n.6 and at 189 (jury awarded damages along a sliding scale which took into account the different experiences of different members of the class, without losing administrative feasibility); Segar v. Smith, 738 F.2d 1249, 1264 (D.C. Cir. 1984) (court calculated back pay and front pay in Title VII case on a class wide basis using statistical methods). Moreover, the difficult causation issue in Cimino and Fibreboard – whether a plaintiff was exposed to asbestos and whether the asbestos or

some other agent caused the medical condition – is not present here.  In this case,

causation is simple and direct.  For any person overdetained past midnight on the day

of his release, or whatever time is set by the court or the jury as the constitutional

threshold, the custom and practice of operating the Department of Corrections

without a workable inmate management system caused the overdetention.  For any

person strip searched, the custom or policy of the Department of Corrections of

subjecting inmates to blanket strip searches, after a judge has ordered their release,

caused the strip search.

In this Circuit, the fact finder may properly infer emotional distress from

factual circumstances and award damages to compensate for that injury.  Berger v.

Iron Workers Reinforced Rodmen, Local 201, 170 F.3d 1111, 1138 (D.C. Cir. 1999),

citing Memphis Community Sch. Dist. v. Stachura, 477 U.S. 299, 311 (1986);

Daskalea v. District of Columbia, 227 F.3d 433, 444 (D.C. Cir. 2000) (plaintiff's

mental and emotional distress suffered while in the DC Jail are compensable under

§1983, even in the absence of physical injury or corroborating expert testimony to

establish the causal link between her treatment in prison and her injuries).

                b.       Sampling Does Not Deprive Defendant of Due Process

Aggregate damages in no way infringe on a defendant's due process rights.

Dellums, 566 F.2d at 189.  The Dellums Court specifically stated, "Nor do we think

that determination of damages in this case requires individualization."  Id.  The Hilao

Court rejected defendant's due process challenge relying on the analysis established in <u>Mathews v. Eldridge</u>, 424 U.S. 319 (1976) for determining whether a procedure by which a private party invokes state power to deprive another person of property satisfies due process.  Recently, in <u>Connecticut v. Doehr</u>, the Supreme Court has refined the third prong of the <u>Mathews</u> test for disputes involving only private parties. Aggregate damages trials using sampling also pass muster under this test.  <u>Justice Improved: The Unrecognized Benefits of Aggregation and Sampling in the Trial of Mass Torts</u>,  44 Stan. L. Rev. at 828.

Once aggregate damages are established against the defendants, the problem of allocations among classes and distribution within each class largely becomes a plaintiff's problem.  <u>Simon II</u>, at *10.  The defendant has no interest in the division of class damages among the class members providing the amount of class-wide damages is accurate.  <u>Id</u>.  Plaintiffs vote on whether to accept distribution of class damages by exercising (or not exercising) their opt-out rights.

Aggregate proof of a defendant's monetary liability is just as accurate as class treatment of other elements of liability.  <u>Long</u>, 761 F. Supp. at 1330.  It is not unusual, and probably more common than otherwise in many types of cases, that aggregate evidence of the defendant's liability is more accurate and precise than would be so with individual proofs of loss."  <u>Id.</u>, <u>citing</u> <u>to</u> <u>Newberg</u> at 349.

The use of sampled data is neither pro-plaintiff nor pro-defendant but favors adjudication on the merits of a legal dispute rather than disposition according to information costs.  The use of statistical sampling for both damages and liability is especially effective given the disparity in power between the class members, the District and its prison system.  Given the number of class members, scientifically valid random sampling and statistical analysis are an effective means to bolster representative testimony.

### 3. **Procedures followed in trying class-wide damages to a jury using sampling  in Hilao**

The seminal case for statistical sampling in cases involving non-economic damages is Hilao, 103 F.3d at 774.  In Hilao, the Ninth Circuit upheld certification of a damages class of approximately 10,000 Philippine nationals or their estates who sought damages as a result of acts of torture, "disappearance", or summary execution that occurred over a 14 year period under the regime of Ferdinand E. Marcos.   The Ninth Circuit approved the district court's use of a statistical sample of the class claims in order to compute and award compensatory damages to the class members. The trial was trifurcated into (1) liability (2) exemplary damages[1] and (3) compensatory damage phases.

---

[1] Plaintiffs are not seeking punitive damages in this case because punitive damages do not lie against a municipality.

Liability was determined by a jury trial of 22 plaintiffs. In the third phase of the trial (the compensatory damage phase) the Court allowed the jury to consider damages to a random sample of plaintiffs as representative of the injuries suffered by the subclasses. To address plaintiffs' due process concerns, the individual plaintiffs were given the choice of opting out of the certified class action and proceeding with individual trials.

The district court made the following initial findings: of 10,059 claims, the court ruled that 518 were invalid leaving 9,541 claims. Sampling methodology was then applied to these valid

claims. Of these, 137 were randomly selected by computer. An inferential statistician testified that the examination of 137 sample claims would achieve a "95 percent statistical probability that same percentage determined to be valid among the examined claims would be applicable to the totality of the claims filed." Hilao, at p.782.

A special master was appointed to oversee the depositions of the sample 137 depending on the definition or category in which the claimant fell. The special master then determined the category for that plaintiff based upon definitions established in the liability phase of the trial, for example torture, summary execution, or disappearance. The jury was free to accept, modify, or reject the award. Id. The Ninth Circuit held that, given the similarity in damages of the subclasses, the

statistical sampling method was "enormous" given the prospect of trying 10,000 individual cases. Id. at p.786.

The special master then recommended the amount of damages to be awarded to each claimant, Id. at p.783, by further breaking down the three classes in the liability phase into damage classes. For example, for the torture victims he considered duration of time, length of detention, methods of torture used, and the age of the victim. For the those persons who summarily disappeared, the special master considered whether they were first tortured, whether there was actual murder, the family's anguish, and lost earnings. Ibid.

Thereafter the statistician in Hilao testified to his methodology and his recommendations of damage awards. at p.783. On appeal before the Ninth Circuit, the Estate of Marcos challenged the statistical methodology employed to determine the class claims.

4. **Procedures to be followed in trying class-wide damages to a jury using sampling in this case**

The following is a summary of Plaintiffs' proposed procedure for trying damages on an aggregate basis. Plaintiffs can elaborate on the procedure as discovery becomes available and as the Court directs.

➤ Obtain class list for Overdetention Class and Male Equal Protection Class (including length of overdetention of each class member);

➤ Statistics expert Richard Berk, Ph. D. selects sample for each class using reliable statistical methods;

➤ Parties conduct discovery of sample plaintiffs under the supervision of a special master;

➤ Special master makes recommendation on the amount of damages to be awarded each sample plaintiff on the basis of depositions and submissions of the parties

➤ Jury trial at which plaintiffs' expert can testify (where evidence supports testimony) that the selection of the random sample met the standards of inferential statistics, that efforts to locate and obtain testimony from the claimants in the random sample "were of the highest standards", that the procedures followed conformed to the standards of inferential statistics, and that the injuries of the random-sample claimants were representative of the class as a whole

➤ Jury trial at which testimony of sample plaintiffs and their witnesses is presented;

➢ Jury trial at which special master testifies about his recommendations and report given to jury;

➢ Jury or the Court determines formula or point system for distributing the class damages among class members. Distribution methods are discussed below.

Discovery. Plaintiffs suggest that a statistical model, based on discovery from a random sample, can adequately address the various damages issues. Plaintiffs proposing limit discovery to members of the sample, and to method (such as depositions). In Hilao the discovery from the sample was limited to depositions supervised by the special master. Hilao, at 782.

Class members. All class members for both classes can be determined from defendant's records. This is not a jury issue.

Distribution of lump sum award. Any award can be allocated among class members based on a per diem amount for Overdetention Class members and Male Equal Protection Class members. Alternative methods include allowing the jury to set a distribution matrix utilizing a formula or a point system or allowing the court to set the distribution method. In Dellums the jury awarded damages along a sliding scale which took into account the different experiences of different members of the class, without losing administrative feasibility. 566 F.2d at n.6 and at 189. Judge Weinstein in Simon II describes how damage awards in the Agent Orange, Dalkon

Shield and Holocaust litigations, for example, have been appropriately distributed through court fixed and administered schemes.  2002 U.S. Dist. LEXIS 25632, at *30.

Cy pres.  Plaintiffs propose that any residue (e.g. class shares of class members who cannot be located) be paid to a cy pres fund where the unclaimed funds may be distributed for the indirect prospective benefit of the class. See Democratic Cent. Comm. v. Washington Metro. Area Transit Commission, 84 F.3d 451 (D.C. Cir. 1996); In re Airline Ticket Com'n Antitrust Litigation, 268 F.3d 619, 625 (8th Cir. 2001).

## VIII.        CONCLUSION

Plaintiffs' proposed trial plan demonstrates that this case can be manageably tried in two phases through the use of testimony, surveys, and aggregate damage awards.


_____
WILLIAM CLAIBORNE
D.C. Bar # 446579